**UNITED STATES of America**

v.

**Jack RAY.**

**Crim A. No. 19818.**

United States District Court
D. Maryland,
Criminal Division.

May 5, 1960.

Leon H. A. Pierson, U. S. Atty., John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

John P. Zebelean, Jr., Baltimore, Md., Court appointed, for defendant.

CHESNUT, District Judge.

Jack Ray, the defendant in the above case, has filed a petition under title 28 U.S.C.A. § 2255 to vacate a sentence imposed upon him by this court nearly 18 years ago. The docket entries and papers in the case show that the Grand Jury indicted Jack Ray on August 4, 1942 for armed robbery of messengers of a bank insured by the Federal Deposit Insurance Corporation, in Hyattsville, Maryland, on September 25, 1941, in the amount of over $50,000; that on the same day the defendant was arraigned in open court, waived the appointment of counsel and entered a plea of guilty, and sentence was deferred at the time; and that on August 7, 1942 the defendant appeared for sentence and was sentenced to imprisonment for 18 years. It will also be noted that on August 4, 1942 when the defendant was arraigned his entry of the plea of guilty was noted on the back of the indictment in the handwriting of Mr. Charles W. Zimmermann who was then the Clerk of the Court and present in court at the time, and that the docket entries were made by Arthur J. Robertson, his deputy, by the express direction of Mr. Zimmermann.

The defendant's petition was not filed until January 18, 1960. In ordinary course the sentence would have been fully served before that time; but it appears that during the running of the sentence the defendant had twice been conditionally released on parole but in each case had been re-taken for breach of parole and that therefore the 18 year sentence will not have expired until some time in 1962 if the prisoner is allowed the deduction of so-called "good time", or 1964 if "good time" is not allowed.

In his petition for vacation of the sentence imposed August 7, 1942, he alleges that the court did not have jurisdiction in sentencing him because he was deprived of his constitutional rights in the matter of his arraignment, plea and sentence. In detailed specification of the latter, he alleges in substance that he had been arrested in North Carolina on July 25, 1942 by agents of the Federal Bureau of Investigation when he was in very bad condition due to his having, for a year or more previously, taken large doses of narcotics; that he was against his will taken by the Agents to Baltimore, Maryland, without first having been taken before a United States Commissioner in the District where arrested; that on his arrival in Baltimore he was kept "incommunicado" by the Agents, without taking him before the United States Commissioner, for several days; that during that time he was given little food or drink, was given morphine by a doctor before

his appearance in court, that he was visited by the United States Attorney who, in co-operation with the federal Agents alternately threatened him and tried to persuade him to co-operate with them on the promise of leniency, and that he was forced to sign some papers which were not read or explained to him, and that finally, while still in a dazed narcotic condition, was taken into court, did not know of his right to have counsel, was not told of his right to counsel and did not waive counsel but was sentenced by the court to 18 years' imprisonment.

Section 2255 of title 28 provides with respect to such a petition that "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." It is, of course, at once apparent that if the facts alleged by the petitioner are true, his petition validly states cause for relief. For this reason the Court, after reading the petition, signed an order requiring the present United States Attorney to show cause why the relief should not be granted. Such cause was shortly thereafter filed; and upon consideration thereof a further order of court was made for the production of the defendant, still in custody, at the first practicable time, for a hearing in court on the petition.

■■ The nature and general character of the averments of the petition are quite similar in many respects to other petitions in recent years filed in this court by defendants to vacate sentences previously imposed. For instance, see United States of America v. McGann (Earl Kill Smith) (also an armed robbery case) D.C.1958, 163 F.Supp. 417, affirmed, 4 Cir., 262 F.2d 590. In those cases the petitions were dismissed without a hearing because it did appear from the whole records and files in the cases that the petitions were without merit as the Court had before it a transcript of the proceedings in court which occurred at the time of the sentences. But the important difference between those cases and this present one is that the court procedure in this case was in 1942 before the Court Reporters' Act of 1944, 28 U.S.C.A. § 753, and there was no court reporter to report and transcribe the proceedings. The docket entries in this case clearly showed that the defendant had waived the appointment of counsel and while they are presumptively correct, the averments of the petition in effect challenged the accuracy of the docket entries and the other averments with regard to the court procedure as to lack of due process were dependent only on the factual memory of the officers of the court. Furthermore there was no available record of the court proceedings in the case to affirmatively and definitely show that the petitioner's present averments were directly contrary to the uniform and customary practice and procedure of the court at that time. Then the customary form of commitment did not, as the revised form now in use for many years past does, recite that where a defendant appeared without counsel "the Court advised the defendant of his right to counsel and asked him whether he desired to have counsel appointed by the Court, and the defendant thereupon stated that he waived the right to the assistance of counsel." Therefore, the case properly required a hearing in court at which the petitioner would be represented and the facts as to the whole procedure at the time of his sentence could be ascertained and determined after hearing the available witnesses, including those of the Federal Bureau of Investigation who had participated in the arrest and subsequent treatment of the defendant.

This hearing was held on Friday, April 29, 1960, the defendant having been brought here from Atlanta, Georgia, to testify on his own behalf, and competent counsel, as requested by him, having been appointed to represent him, Mr. John J. Zebelean, Jr.

At the hearing here the defendant as a witness repeated in substance most of

the averments of his petition. On the other hand, the present Assistant United States Attorney, Mr. Hargrove, called as witnesses five of the seven or eight Federal Bureau of Investigation Agents who had participated in the arrest of the defendant in North Carolina or had been in contact with him in Baltimore, some of whom were also present and testified to the proceedings in court. These witnesses had been brought back by the Government from far distant places in the United States where they are presently stationed. The Chief of the Federal Bureau of Investigation Agents referred to by the defendant in Baltimore, Mr. Horace Dill, had died three years ago. Also called as witnesses at the trial were Bernard J. Flynn, United States Attorney in 1942, and his chief deputy, T. Barton Harrington who personally presented the case against the defendant in court. Still other witnesses were John F. Landis, then Chief Probation Officer of this court and Arthur J. Robertson, deputy clerk in office since 1927, with regard to the established customary practice and procedure of the court in such cases.

 Shortly stated, the testimony of these witnesses showed as I find on the facts, the following:

1. The defendant was arrested in Kinston, North Carolina on July 25, 1942. He was then in bad physical condition as he said he had been a heavy user of narcotics for the past year, but mentally he was alert and intelligent in his conversation. He admitted his participation in the robbery and expressed willingness to return to Baltimore without the necessity of removal proceedings and without being immediately taken before a United States Commissioner. He indicated this was his preference because he apprehended possible personal difficulty with others involved less directly in the actual robbery [1] who had not theretofore been arrested. As the defendant when arrested was in bad physical condi-

tion and craved more narcotics, the F.B.I. Agents called in a local physician who gave the defendant a small narcotics dose. The defendant signed two papers in North Carolina, one that he agreed to voluntarily return to Baltimore with the Agents, and the other that he waived appearance before a United States Commissioner. These papers are exhibits in the present case. As a witness Ray admitted his signatures thereto but said that he did not understand them.

2. He was then taken by two of the Agents to Baltimore, Maryland, and kept, by his consent, in the offices of the F.B.I. and was attended by Dr. Miller, the Baltimore City Jail physician whose contemporaneous report as to his daily condition and treatment is filed in the case. Ray also signed a statement that he did not wish to be taken before the United States Commissioner here but preferred to remain in the custody of the F.B.I. Agents; and later, on August 1, 1942, he signed a statement giving in detail his activities with respect to the robbery. These papers are also filed as exhibits in the case. As a witness here Ray admitted his signature but again stated that he was not aware of the contents of the papers. As to this, there was testimony to the contrary.

3. When Ray was arraigned in court on August 4, 1942, the background of the case was well known to the court officials including myself, as a result of the trial of two other participants in the same armed robbery, Sanders and Keefe. Their extended trial had taken place a few months previously, in which they were represented by counsel of their own selection and the jury found a verdict of guilty in the case and they had been sentenced by the court to imprisonment for 20 years, which was affirmed by the Fourth Circuit in Sanders v. United States, 1942, 127 F.2d 647, certiorari denied 317 U.S. 626, 63 S.Ct. 37, 87 L. Ed. 506.

---

1. It appears from the records of the court shortly thereafter another defendant implicated as an accessory to this robbery, was arrested and pleaded guilty and was sentenced to imprisonment in this court.

United States v. Blalock, Case No. 19990, Feb. 17, 1943. And still later another defendant in the same case pleaded guilty and was sentenced on March 27, 1943. See Criminal No. 20002.

On the morning of September 25, 1941 two messengers from the Prince George's Bank & Trust Company of Hyattsville, Maryland, who were in an automobile with a payroll of over $50,000 for a banking customer, were held up on the street by three armed men in another automobile. Sanders and Keefe, who were tried, were two of the three armed men but the third man had not been arrested at the time of their trial. Ray's case was presented to the court as that of the third man in the car of the armed robbers.

4. When Ray was arraigned he was asked by the clerk whether he had counsel and as he had no counsel, he was informed by the clerk that he was entitled to have counsel and that the court would appoint counsel for him if he desired, and he intelligently waived the appointment thereof.[2] This was the then uniform practice and procedure of this court in 1942, and indeed for some years prior thereto, where defendants were arraigned without counsel. As the defendant's phsyical appearance was bad and the court was informed that he was a narcotic addict, sentence was postponed pending further information as to the defendant's physical and mental condition and other information usually contained in a probation report. After this report was received from Mr. Landis, the then chief probation officer, who had personally interviewed Ray, and after the customary hearing in court prior to sentence with regard to the circumstances of the case and with opportunity to the defendant to give any information or statement that he wished to make to the court, the sentence was imposed.

Ray testified that he recalled that he was brought into court but on only one occasion and not two separate days and that he was not even conscious that he had been sentenced because his recollection of the whole matter was like that of a "dream" only. That statement cannot be reconciled with the detailed information in his signed statement dated August 1, 1942 as to his participation in the robbery. And it will be noted also that between August 4, 1942, the day he was arraigned in court, and August 7, 1942, the day sentence was imposed, he had repeated to Mr. Landis the details of his participation in the robbery. And even

2. See contemporaneous official report of Mr. Flynn (dated Aug. 7, 1942) then United States Attorney for Maryland, to the Attorney General (prepared by Mr. Harrington, his deputy, who had presented the case) which reads:

"Baltimore, Maryland,
August 7, 1942

"The Attorney General,
"Washington, D.C.

"Re: United States v. Jack Ray, alias Maynard Ray, alias Ray Maynard, alias J. M. Ray.
Criminal No. 19818.
(Hilliard Sanders, alias George L. Thompson, and William Leo Keefe, Criminal No. 19674).
Bank Robbery.
Department of Justice File: WB: ZCB:jgw

"Sir:

"The third defendant in the holdup of messengers of the Prince George's Bank and Trust Company at Hyattsville, Maryland, on September 28, 1941, was apprehended in Kinston, North Carolina, on July 25, 1942, and brought to Baltimore.

"He signed a statement admitting his participation in the robbery and was indicted by the Grand Jury on Tuesday, August 4, 1942. The same afternoon he was arraigned before Judge Chesnut and entered a plea of guilty. At that time, Judge Chesnut advised him of his right to be represented by counsel but he declined appointment of counsel. Judge Chesnut requested the Probation Department to make an immediate investigation due to the fact that the defendant was a narcotic addict.

"Today, Friday, August 7, 1942, he was sentenced by Judge Chesnut to eighteen years in the Penitentiary.

"Respectfully yours,

"Bernard J. Flynn
"United States Attorney"

See also the testimony of Mr. Thompson, a then recently appointed F.B.I. Agent, who attended the hearing of the case on August 4 and 7, 1942, who was an interested observer of the proceedings and whose testimony is to the effect that the defendant was advised of his right to have counsel but intelligently waived the appointment thereof.

now as a witness in this case on cross-examination he freely admitted his guilt and his recollection of the main part he played in the robbery.

5. It is hard to accept as credible Ray's present statement that he did not know in 1942 that he was entitled to have counsel if he desired. He admitted that on many occasions prior to his present case he had been convicted of criminal offenses in North Carolina, some of which were of a substantially serious nature, receiving in one case a sentence of 5 to 8 years.

6. After the sentence on August 7, 1942, nothing occurred in Ray's case until September 19, 1948 when Ray wrote me a letter stating that his request for parole had been denied and that he was asking my favorable recommendation in the matter of executive clemency. I replied in substance that I would consider that if my recommendation was asked by the Department of Justice. Shortly thereafter Ray again wrote me, for the first time complaining that he had not been properly sentenced because he must have been of unsound mind and unable to act intelligently by reason of narcotics at the time, and also asking me to appoint counsel for him. After refreshing my recollection of the case which had occurred six years previously in 1942, I replied telling him that if he desired to take the responsibility of stating under affidavit the facts mentioned in his letter, he could file such a petition and if occasion required, I could appoint counsel for him and the matter could be investigated. To this he replied on December 21, 1948, thanking me for my attention to his case and saying that in due course he would file a petition as I had explained the necessary procedure to him. This correspondence will be found as an exhibit in the case. He did not file such a petition until nearly 12 years later. In the meantime he had twice been conditionally released on parole and re-taken by the Parole Board for breach of parole.

At the conclusion of the hearing on April 29, 1960, I gave an oral opinion stating that the petition would be dismissed, and a brief opinion from the Bench stating in effect that the sole issue raised by the hearing on the defendant's petition was whether I could accept as credible the defendant's testimony; and that I concluded after hearing all the testimony of the numerous credible and personally disinterested witnesses other than that of their official relation to the case, that the petitioner's averments could not be accepted as credible in the face of the overwhelming testimony to the contrary. And I added that when possible I would write a more formal opinion.

My conclusion of law, therefore, is that the procedure in this court in consequence of which the defendant was sentenced to imprisonment for 18 years was in all respects in full compliance with due process of law and that there was no lack of jurisdiction with regard to the sentence imposed.

It must be remembered that this case occurred in 1942, long before the adoption by the Supreme Court of Rules 10 and 11 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., in 1946 and also before the opinion of the Court of Appeals for the Fourth Circuit in Gundlach v. United States, 1958, 262 F.2d 72, and that the necessity for the hearing at this time to inquire into the correctness of the sentence was due to the fact that there was no stenographic transcript of the proceedings at the time of the defendant's arraignment and sentence. In many quite similar cases which have been presented to this court there has been available a transcript of the court procedure at the time, by reference to which it was unnecessary to hold a hearing. In 1938 the Supreme Court of the United States decided the now well-known case of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, in which it was held that under the 6th Amendment the defendant was entitled to have counsel appointed to represent him and unless that right was intelligently waived, the following sentence was invalid and should be vacated. This decision did not change the practice and procedure in this District in such cases because, so far as I can recollect, in every federal criminal case an indigent defendant having no

lawyer but wanting one, had one appointed by the court. However that decision in 1938 did emphasize the importance of having a contemporaneous memorandum or record which, if the sentence were subsequently challenged, would show that the defendant had waived the appointment of counsel. I think it had not theretofore been customary either in this federal court or in the State Courts of Maryland, to make a docket entry to the effect of the waiver of counsel. I therefore instructed our court clerk to enter of record in the docket entries of the case the fact that the defendant waived the appointment of counsel where that occurred, and as Mr. Robertson, the present deputy clerk, has testified in this case, there were further instructions to the clerk as to questions to be put to the defendant upon arraignment with respect to the matter of counsel. In a number of previous cases where petitions have been filed to strike out sentences for alleged lack of proper counsel at the time, I have stated the practice of the court in previous years and at the present time. See United States v. Witherspoon, D.C.Md.1958, 167 F.Supp. 297, affirmed per curiam, 4 Cir., 264 F. 2d 480; United States v. McGann (Earl Kill Smith), supra, and United States v. Bice, D.C.Md.1949, 84 F.Supp. 290, affirmed per curiam, 4 Cir., 177 F.2d 843.

As to the practice prevailing with respect to the Federal Bureau of Investigation Agents holding a prisoner without very promptly taking him before a United States Commissioner, it will be remembered that this was long before the adoption of Rule 5 of the Federal Rules of Criminal Procedure in 1946, and before the decisions of the Supreme Court in McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

For these reasons I have signed an order dismissing the present petition and remanding Ray to the custody of the Attorney General. The Clerk is instructed to notify Mr. Zebelean, attorney for the petitioner, of the filing of this opinion.