507 P.2d 430

Ray ABOUD, Plaintiff-Appellee,

v.

Edith K. ADAMS and the Estate of Clifford L. Adams, Deceased, and Edith K. Adams, Executor De Son Tort, Defendants-Appellants,

v.

WALKER–HINKLE, INC., and C. E. (Bob) Burns, Third-Party Defendants-Appellees.

No. 9431.

Supreme Court of New Mexico.

March 2, 1973.

James B. Cooney, Farmington, Robinson, Stevens & Thompson, Albuquerque, for defendants-appellants.

Palmer & Frost, Farmington, for Aboud.

White & Caton, Farmington, for third-party defendants-appellees.

## OPINION

MONTOYA, Justice.

This is an appeal from a decision of the District Court of San Juan County resulting from an action brought therein by plaintiff, the vendor of some real and personal property, to recover damages for breach of contract by the defendants-vendees. For convenience, the parties will be referred to as they appeared below. The trial court awarded damages to the plaintiff and to one of the cross-defendants.

The facts material to this appeal are as follows. Plaintiff Aboud filed a breach of contract action seeking damages on a contract by defendants Mr. and Mrs. Adams to purchase real and personal property consisting of a furnished motel. A binder agreement was signed by plaintiff and defendants on August 16, 1968, and later, on August 23, 1968, a final contract was signed by the plaintiff and Mr. Clifford Adams only, who shortly thereafter took possession of the property in question. After operating the motel Mr. Adams repudiated the contract and returned the property to the plaintiff. Before trial and before defendant Adams died, his wife was joined as a party, as was Burns, a real estate broker who was an employee of Walker-Hinkle, Inc. The defendants then filed a cross-claim against Burns, the real estate broker, which was later amended to include Walker-Hinkle, Inc., his employer, as cross-defendants. Later the pleadings were determined to mean that the cross-defendants, Burns and Walker-Hinkle, Inc., would be considered third-party defendants. After answer, both Burns and Walker-Hinkle, Inc. filed a cross-claim against defendants alleging breach of contract for failing to pay the broker's fee due on the transaction between plaintiff and defendants. Defendants denied the material allegations of plaintiff's complaint and affirmatively alleged that there was no contract since Mrs. Adams had not signed the final documents; and that the plaintiff had acquiesced in the termination of the contract when plaintiff elected to keep the proceeds of the motel operation while defendants were in possession, and had regained possession of the motel premises.

The undisputed findings show that Walker-Hinkle, Inc. was the employer of Burns and both were agents for the plaintiff in connection with the motel sale; that the broker obtained defendants as purchasers; and that plaintiff and defendants signed a binder agreement to pay a purchase price of $211,500, plus $13,500 as broker's fees.

The trial court then made findings of fact which are challenged on this appeal to the effect that defendants had available to them all records of the motel operation before the final contract, and that no erroneous or false representations were made or concealed by either the plaintiff or his agent Burns. Conclusions of law which are challenged on this appeal are that the final contract called for the payment of a purchase price of $214,000; that Mr. Adams then took possession of the property, but subsequently repudiated the contract and returned the property to the plaintiff; that later, through the efforts of Walker-Hinkle, Inc., plaintiff found another purchaser for the property for the best obtainable price of $200,000; that plaintiff incurred attorney's fees in the amount of $4,000 and Walker-Hinkle, Inc. incurred a

like expenditure in the amount of $1,500; that Walker-Hinkle, Inc. was entitled to the broker's commission in the amount of $13,500, which defendants had agreed to pay. In addition, defendants' challenge a portion of the special damages awarded plaintiff.

Judgment was entered in behalf of plaintiff for $14,000 damages, plus additional special damages of $698.22, and $4,000 for attorney's fees, and also awarded Walker-Hinkle, Inc. damages of $13,500 on broker's fees and $1,500 for attorney's fees incurred.

The defendants contend that the agreement was conditional and never became effective and that, if effective, they.were entitled to rescind because of misrepresentations made by plaintiff's agent which were relied upon. It is further contended that, if there was a breach of contract, the trial court failed to apply the proper measure of damages and erred in ordering payment of broker's fees by defendants. Another contention is that the trial court erred in awarding attorney's fees as an item of damages, and further erred in its disposition of proceeds from the operation of the motel during the time defendants were in possession.

■ The first question we must resolve is whether the contract in question was conditional. Defendants do not deny that the sales contract dated August·23, 1968, was executed and signed by·Mr. Adams only, although both Mrs. Adams and her deceased husband had signed the prior binder agreement.

The trial court considered and had the contracts before it and defendants contended at the trial that they took possession of the motel on a trial basis only. There is conflicting evidence in the record concerning the existence of any conditions being attached to the agreement. In considering the conflicting evidence on this point, the trial court weighed the same and made the following findings of fact:

"4. The defendant Clifford Adams signed a contract of sale (PX-5)

which was also signed by plaintiff Aboud, but which was never signed by Mrs. Adams.

"5. Clifford Adams took possession of the motel and operated it for a period of time.

"6. Clifford Adams. subsequently repudiated the contract to purchase the motel, vacated the premises and surrendered it to the plaintiff Aboud, and re-took without consent all consideration he had deposited with the escrow agent."

A review of .the record indicates that these findings are supported by the evidence and, therefore, will not be disturbed on appeal. It is the trial court's function to weigh the sufficiency of the evidence. In Cave v. Cave, 81 N.M. 797, 474 P.2d 480 (1970), this court stated:

."At the·outset, we must state the rules which govern our review of the·court's findings. If supported by substantial evidence, we will not question them. ·Any disputed fact is to be resolved in favor of the defendants [prevailing party in the lower court] and the evidence is to be viewed in the aspect most favorable to the successful parties. The trial court is to determine credibility and weight. All reasonable inferences are to be indulged in to support the findings made; evidence and inferences to the contrary are disregarded. [Citations omitted.] * * *"

For a very comprehensive definition of the substantial evidence rule, see Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 428 P.2d 625 (1967).

■ The next contention advanced by defendants is that if the contract was effective they were entitled to rescind because it had been induced by plaintiff's misrepresentations. Primarily, the basis of the argument is twofold. First, that the records of the motel operation had not been available to defendants; and second, that defendants relied on the representation of the broker as agent of plaintiff that the motel would gross $56,000 per year.

As to the first contention, the applicable findings of the trial court are:

"7. Clifford Adams and Mrs. Adams had inspected the premises and had available to them all the records of the operation of the motel before they signed the binder (PX–1).

"8. Mr. Adams further inspected the motel premises and had available to him the records of the motel operation before he executed the contract of sale (PX–5).

"9. The Adams were both knowledgeable and experienced in motel operation and in the buying and selling of such businesses."

Whether or not the defendants had inspected the premises or had access to the business records of the motel operation before signing the contract of sale is a question of fact.

Defendants correctly appraise the relevant evidence on this question when they state: "Certainly the evidence which was presented on the issue was contradictory." Obviously defendants meant "conflicting" instead of "contradictory." However, defendants go on to state:

"Nevertheless, an examination of the substance of all the evidence bearing on the proposition can lead one only to the conclusion that the court's findings are not supported by substantial evidence. * * *"

If the evidence is as defendants state "contradictory [sic]," it is not the function of this court to delve into the trial court's mind to see if the "substance" of the evidence supports a contrary finding on the disputed evidence. See Tome Land & Improvement Co. v. Silva, 83 N.M. 549, 494 P.2d 962 (1972); Cooper v. Burrows, 83 N.M. 555, 494 P.2d 968 (1972); Williams v. Vandenhoven, 82 N.M. 352, 482 P.2d 55 (1971); Trujillo v. Romero, 82 N.M. 301, 481 P.2d 89 (1971); Wood v. Citizens Standard Life Insurance Company, 82 N.M. 271, 480 P.2d 161 (1971); Tapia v. Panhandle Steel Erectors Company, supra.

The evidence revealed that Mrs. Adams testified she had not seen a gross receipts tax report prior to the time Mr. Adams signed the contract. On the other hand, plaintiff testified that defendants were shown the books and records, including the gross receipts reports for the Bureau of Revenue. The expertise of defendants in relation to motel operations is also present in the record. Furthermore, the record reveals that defendants had an unimpeded and unrestricted opportunity to thoroughly examine the property and that they did in fact make such examination of the property as they desired.

Defendants rely mainly on plaintiff's exhibit No. 3, a brochure produced by Walker-Hinkle, Inc., for support of the claim of misrepresentation as to the gross receipts of the motel operation. The statement in the brochure reads: "Approx. gross on increase . . . . . . $55,000.00."

Since we have already dealt with the question of whether or not defendants had inspected the records and the premises of the motel operation and decided in the affirmative, we are here solely concerned with the statement appearing in the brochure.

Plaintiff points out that "misrepresentation, to be actionable, must relate to a present or pre-existing fact, and may not be predicated upon representations as to matters which are to happen in the future." Furthermore, plaintiff states that the statement in the brochure is mere "puffing" and is an "approximation."

Berrendo Irr. F. Co. v. Jacobs, 23 N.M. 290, 168 P. 483 (1917), states the general rule:

"The law is that where a vendee undertakes to make investigation of his own, and is given full means to ascertain all the facts, and is not prevented from making the examination as full as he likes, he cannot be heard to complain because he relied upon representations of the vendor if his purchase proves unsuc-

cessful. In Page on Contracts, § 123, it is said:

"'If the person to whom the false statements are made did not rely on them but investigates for himself, and acts and relies on his own knowledge, no fraud exists, if the falsity of such representations was or could be discovered thereby, and if no artifice was resorted to to prevent him from discovering the truth.'

"There is a question of fact in the case, however, as to whether appellees made a thorough investigation of the land in question and relied upon such investigation. This question, however, can be determined by the jury under proper instructions of the court."

See Miller v. Golden W. Motel, 78 N.M. 116, 428 P.2d 655 (1967); Johnson v. Bonnell, 52 N.M. 123, 192 P.2d 836 (1948); Bell v. Lammon, 51 N.M. 113, 179 P.2d 757 (1947). Compare Bennett v. Finley, 54 N.M. 139, 215 P.2d 1013 (1950); and Bell v. Kyle, 27 N.M. 9, 192 P. 512 (1920), where there was no inspection and thus justifiable reliance.

In addition to findings of fact Nos. 7, 8 and 9 quoted above, the trial court found:

"10. There was no erroneous or false representations made or concealment of any facts relating to the motel or its operations by either Aboud or the agent Burns to the Adams."

The evidence relating to defendants' inspection of the records, premises of the motel operation, and their knowledge of motel operations in general, has already been reviewed and we believe that defendants were not justified in relying on the statement in the broker's brochure. The trial court, in weighing the evidence outlined above, entered the findings of fact referred to earlier. That these findings were based on substantial evidence is apparent upon an examination of the record.

Defendants also contend that, if the contract was breached, the trial court erred in its award of damages. Defendants argue that the evidence does not support the damages awarded and that the judgment is excessive. The agreement to purchase the motel operation was for the sum of $214,000. This agreement was entered into on August 23, 1968. The alleged breach occurred eight days later, on September 1, 1968, when defendants turned the motel operation back to plaintiff. Plaintiff took control of the motel and continued to operate it for the next 17 months, whereupon he resold it in January 1970, for $200,000. The trial court concluded:

"6. Plaintiff Aboud suffered as damages for the breach his loss of bargain, the difference between what the Adams had agreed to pay and what he later sold for, amounting to $14,000.00."

We are here confronted with the application of the so-called "loss of the bargain" rule, as it applies to an action for breach of contract between vendor and purchaser. While acknowledging that the general rule has been enunciated in New Mexico, the parties on appeal maintain that this case is "one of first impression" and that the rule has not been "construed" in New Mexico under the circumstances here present. However, we have several New Mexico cases which bear upon the issue at hand.

Conley v. Davidson, 35 N.M. 173, 291 P. 489 (1930), states the general rule:

"The general rule is that the purchaser is entitled, as general damages for the refusal or inability of the vendor to convey, to recover the difference between the actual value of the land and the agreed price to be paid therefor. This is generally known as the loss of bargain rule. 27 R.C.L. 631, § 388. This rule when applied to contracts for exchange of land where neither party has conveyed is stated as follows: Plaintiff is permitted to recover the difference between the value of the land which he was to convey and that which he was to receive. * * *"

Although Conley v. Davidson, supra, was concerned with the remedy available to a purchaser where the vendor has breached the contract, there is no difference when the rule is applied to the opposite situation, i. e., where the vendor is seeking damages from a vendee. This particular situation, where the vendee is in default, has never been dealt with in New Mexico. However, there is applicable law from other jurisdictions which, together with existing New Mexico precedent, will control on the issue of damages.

As stated by Professor Corbin in 5 Corbin on Contracts, Damages—Sales of Land, § 1098A at 535:

"In case of breach by the purchaser, the vendor's damages are the full contract price minus the market value of the land *at date of breach* and also minus any payment received. * * *" (Emphasis added.)

See also McCormick on Damages, Action by the Vendor, Damages for Total Breach of Contract by Purchaser, § 186 at 709; and 2 Sutherland, Damages, § 584 at 2007.

Plaintiff agrees that this is a sound statement of the general loss of the bargain rule, but argues that "under certain circumstances an alternate rule must be applied in fixing the amount of damages." He quotes from 55 Am.Jur. Vendor and Purchaser, § 524 at 919:

"Where the rule as to the difference between the contract and market prices is inadequate or inapplicable, other rules for measuring the damages are necessary and must be applied, and such other rules permit the recovery, under certain circumstances, of damages in addition, or as an alternative, to the recovery of the difference between the contract and market prices, provided that such additional or alternative damages could have been reasonably anticipated by the parties, when they made the contract, as likely to be caused by the breach. * * *"

This argument is without merit for there is no evidence or finding by the trial court

that the application of the loss of the bargain rule would be inadequate or inapplicable as to require "alternative" or "additional" measurement of the damages. Nor was there an indication that the reasonable anticipations of the parties were made known so as to provide for that "alternative" measure. In short, the loss of the bargain rule was not properly applied as there was no finding made of the market value of the land in question at the time of the breach. The trial court simply took the difference between "what the Adams had agreed to pay and what he later sold for, amounting to $14,000.00."

55 Am.Jur. Vendor & Purchaser, § 526 at 920, points out the general law to be applied in the case of a resale:

"Conceding that the damages for the purchaser's breach of his contract to purchase land are usually measured by the difference between the contract price and the actual or market value of the land, the question is frequently presented whether or not the vendor may resell the land after the vendee's breach, and hold the vendee liable for the difference between the price received and the contract price. * * * [I]n this country in the case of a private sale of land, the right of the vendor to resell on account of the purchaser and recover any deficiency arising on the resale is generally denied. * * *"

See Annot. 52 A.L.R. Damages, Breach of Contract to Buy Land at 1514; Difference between the contract price and the amount received on a resale of the land.

While a subsequent sale is evidence of the market value at the time of breach, it is not conclusive and the court must properly establish the market value at such time. Andreasen v. Hansen, 8 Utah 2d 370, 335 P.2d 404 (1959). Thus, evidence of the resale price is properly admitted as one of the factors in determining market value.

In Van Buskirk v. McClenahan, 163 Cal.App.2d 633, 329 P.2d 924 (1958), the California court, in determining the rule of

damages in a breach of contract case, though holding that evidence as to the resale price of the property was admissible as one of the factors in determining market value, stated the following:

"If the resale time is different or later than the time of the breach, then evidence should be adduced as to any difference, if any, in the market value between the two dates. [Citation omitted.]"

In Bunnell v. Bills, 13 Utah 2d 83, 368 P.2d 597 (1962), where a breach of contract action was filed on the sale of a motor lodge, the case was reversed, holding that evidence was insufficient to sustain a finding of damages in the amount found by the trial court. The Utah Supreme Court held that the proper measure of damages, where the vendor has breached a land sale contract, is the market value of the property at the time of the breach, less the contract price to the vendee. See also Wheeler v. Burger, 126 A.2d 869 (D.C. Mun.App.1956); Williams v. Havens, 92 Idaho 439, 444 P.2d 132 (1968); Higgins v. Belson, 66 Idaho 736, 168 P.2d 813 (1946); State v. Jacobs, 16 Utah 2d 167, 397 P.2d 463 (1964).

In Costello v. Johnson, 265 Minn. 204, 211, 121 N.W.2d 70 (1963), we find the following:

"* * *. In case of a private sale of land courts in this country have generally denied the right of the vendor to resell on account of the purchaser and then recover from him any deficiency arising out of the resale. See, 55 Am. Jur., Vendor and Purchaser, § 526; 92 C.J.S. Vendor and Purchaser § 537c(3); Cowdery v. Greenlee, 126 Ga. 786, 55 S. E. 918; 8 L.R.A.,N.S., 137. However, it seems to be the general rule that where a resale is made upon as favorable terms and under as favorable circumstances as the original sale, and is made within a reasonable time and after proper notice to the purchaser, the amount received on the resale may properly be admitted as evidence—though not conclusive—of the market value of the land for the purpose of fixing damages. 55 Am.Jur., Vendor and Purchaser, § 526. Clearly, evidence of a resale within the time in which it occurred in the instant case was admissible."

It is to be noted that the sale contract in Costello v. Johnson, supra, was signed on March 23, 1959, the breach occurred on May 7, 1959, and the resale of the property by the vendor occurred in July 1959. And in Bouchard v. Orange, 177 Cal.App.2d 521, 2 Cal.Rptr. 388 (1960), it is stated:

"* * * [I]t is the duty of the trial court when using the resale price as evidence of value as of the time of breach to make an adjustment for any decline in market value between the date of breach and the date of resale. * * *"

See also McLean v. Patterson, 20 Conn. Sup. 367, 135 A.2d 603 (1957); Downing v. H. G. Smithy Co., 125 A.2d 272 (D.C. Mun.App.1956); Valdez v. Christensen, 89 Idaho 285, 404 P.2d 343 (1965); Melton v. Amar, 83 Idaho 99, 358 P.2d 855 (1961); State v. Clinger, 72 Idaho 222, 238 P.2d 1145 (1951); Bunnell v. Bills, supra.

The federal courts are in apparent agreement with the views stated herein. See Wolf v. Cohen, 126 U.S.App.D.C. 423, 379 F.2d 477 (1967); Quick v. Pointer, 88 U.S.App.D.C. 47, 186 F.2d 355 (1950); and Cohen v. Lovitz, 255 F.Supp. 302 (D.C. 1966).

As mentioned previously, the "loss of the bargain" rule was first delineated in New Mexico in Conley v. Davidson, supra. There have been further applications of that rule in this state, though no case involved a breach by the purchaser of a contract to buy land. As indicated above, the weight of authority does not make a distinction between remedies where the purchaser is in breach rather than the vendor. Therefore, we turn to several New Mexico cases for amplification of the above stated rule.

In Adams v. Cox, 54 N.M. 256, 221 P.2d 555 (1950), this court held, in a suit brought by purchaser to recover damages

for breach of contract to sell real and personal property, that:

"* * *. The contract in question was an executory one for the sale and purchase of a going business and covered both real estate and personal property. In the absence of circumstances warranting recovery of ascertainable special damages, the 'loss of bargain' rule applies as the measure of damages for refusal of vendor to convey under an executory contract for the sale of real estate. The rule is stated by the author of the case note on the subject in 48 A. L.R. 12(14) as follows: 'The general rule for assessing the damage for breach by the seller under an executory contract for the sale of personal property, by failing to deliver the property, is to allow the buyer the difference, if any, between the contract price and the market value of the property, *either at the time of the breach, or at the time fixed for the delivery of the property*. 24 R.C.L. 70. * * *'" (Emphasis added.)

See also Johnson v. Nickels, 66 N.M. 181, 344 P.2d 697 (1959); Sellers v. Orona, 58 N.M. 53, 265 P.2d 369 (1954); and Pugh v. Tidwell, 52 N.M. 386, 199 P.2d 1001 (1948), where this court stated the measure of damages

"* * * is the difference between the agreed price at the time and place of delivery and the market price at time of refusal. [Citations omitted.]"

Pugh v. Tidwell, supra, dealt with the sale of personal property, but it was quoted with approval in Johnson v. Nickels, supra, along with the similar general rule of damages stated in Conley v. Davidson, supra.

From the above discussion it is clear that the holding of the trial court, to the effect that the plaintiff suffered damages equal to the difference between the contract price and the resale price, does not state the correct measure of damages. While this figure is evidence of the market value at the time of breach, it is not conclusive. The issue of damages must, therefore, be remanded to the trial court to as-

certain the value of the property at the time of breach, consistent with the authorities outlined above.

 Defendants also contend that the trial court erred when it awarded legal fees as damages to plaintiff. Research indicates that this is indeed the case. This case is remanded with further instructions that the award of attorney's fees be reversed, or that the respective amounts should be subtracted from the overall award. This court, in State v. Lujan, 43 N.M. 348, 93 P.2d 1002 (1939), states the general rule:

"In the absence of a statute or rule of court it cannot be said that attorney fees are such items as are properly taxed as costs, or may be considered as items recoverable as damages. [Citations omitted.]"

Thus, the rule above stated is in compliance with the more general rule "that each party to litigation must pay his own counsel fees." State v. Lujan, supra.

In Gregg v. Gardner, 73 N.M. 347, 388 P.2d 68 (1963), this court stated:

"* * *. Allowance of attorney fees has been approved by us in rare instances. An exception to the general rule several times recognized by this court is present in the situation where attorney fees in a reasonable amount have been necessarily expended to obtain dissolution of an injunction. [Citations omitted.] Another exception was recognized in a case where attorneys successfully prevented unlawful disposition of property of a 'semi-public' corporation. [Citation omitted.] A third exception was approved [Citation omitted.] where it was held that the court did not abuse its discretion in ordering an attorney fee to be paid by the corporation on behalf of the parties on each side of a declaratory judgment proceeding seeking a determination of the rights of stockholders and directors of the corporation. * * *

"* * * where an attorney fee was allowed on behalf of lawyers who had

brought large sums into a trust through litigation involving construction of a will. * * *"

The New Mexico cases supporting the rule are legion. In addition to those mentioned previously, see Lanier v. Securities Acceptance Corporation, 74 N.M. 755, 398 P.2d 980 (1965); and Keller v. Cavanaugh, 64 N.M. 86, 324 P.2d 783 (1958).

Plaintiff cites Bank of New Mexico v. Rice, 78 N.M. 170, 429 P.2d 368 (1967), for the proposition that attorney's fees are allowable if they are a consequence of breach of contract, relying on the following pertinent language therein:

"Attorney Fees in the Foreclosure Suits—These fees were incurred when plaintiff foreclosed on security furnished by the corporation. There is no evidence that these fees resulted from plaintiff's breach of contract."

From this plaintiff asserts that Judge Wood, sitting on the Supreme Court, indicated that had the fees resulted from the breach of contract they would have been recoverable as damages. However, plaintiff makes no mention of the Supreme Court's earlier decision in Riggs·v. Gardikas, 78 N.M. 5, 427 P.2d 890 (1967), in which Justice Noble clearly states:

"* * *. It seems to be well settled in this jurisdiction that absent statutory authority or rule of court, attorneys fees are not recoverable as an item of damages. [Citations omitted.] * * *"

In addition, this rule was once again stated in a more recent case of the Court of Appeals in Tabet Lumber Company v. Chalamidas, 83 N.M. 172, 489 P.2d 885 (1971). Chief Judge Wood, obviously not inferring the plaintiff's interpretation of Rice, stated:

"* * *. Absent statutory authority or rule of court, attorney fees are not recoverable as an item of damages. [Citations omitted.] * * *."

As hereinbefore stated, the award of damages of $4,000 on the vendor's judgment and $1,500 on the broker's judgment, is reversed.

Plaintiff and defendants entered into a binder agreement on August 16, 1968, which obligated defendants to pay a purchase price of $211,500, plus the broker's commission of $13,500, for the property in question. On·August 23, 1968, the parties entered into a real estate contract to purchase said property for the sum of $214,000. No mention is made of the broker's commission in the latter contract.

Because the contract of August 23, 1968, was "substantially and materially different," and because the "broker would be required to show that purchaser reaffirmed his obligation to pay the broker's fee," defendants argue that the binder agreement providing for payment by the defendants of a broker's fee is to be considered rescinded by mutual understanding of the parties.

After making findings of fact as to the two agreements outlined above, the trial court concluded that:

"1. The essence of the agreement of the plaintiff Aboud and the defendants Adams as expressed in the two instruments (PX–1, the binder, and PX–5, the contract of sale) as construed together is that the Adams as purchasers would buy, and Aboud as seller would sell the Encore Motel for $227,500.00, with this making a net purchase price to Aboud of $214,000.00, with the Adams agreeing to pay the commission due Walker-Hinkle of $13,500.00 over a period of time."

A review of the record reveals that if both the binder and contract agreements are compared, they reflect a $2,500 difference in selling price, the binder $211,500, and the sale contract $214,000. As mentioned previously, the broker's commission of $13,500 was separately included in the former and not mentioned in the latter.

Although there was no finding of fact made by the trial court as to the intention of the parties, the above conclusion of law No. 1 is supported by the record. The broker testified the bank that held the first

mortgage on the property in question would not permit the defendants to assume it. This necessitated the assumption of the first mortgage by plaintiff. In turn, this resulted in additional expenses and for this reason the purchase price was raised from $211,500 to $214,000. This additional sum of $2,500 was to be added onto the final contract.

Plaintiff also testified as to this arrangement:

"A. Well, the bank in Denver didn't want to continue with the mortgage to any buyer, and so I was to assume that mortgage. I was to buy that mortgage, and in turn there would be an additional expense that I would have to—have to do, and so that is the difference between the two hundred eleven, five hundred and two hundred fourteen thousand dollars."

The above evidence is uncontroverted. In fact, it was verified by Linda Nye, a representative from the title company handling the transaction, and Jerry Lee Adams, defendants' son who was present at many of the negotiations.

In light of this evidence, it appears that the only material discrepancy between the binder agreement and the sales contract is $2,500, which is explained above by the assumption of the first mortgage by plaintiff. Thus, the trial court concluded that the sales contract did not serve to mutually rescind the binder agreement, but that it should be read in conjunction with it. This would then bind defendants for the broker's commission. This is a proper and reasonable understanding of the facts of this case, as reflected by the testimony and the documents in question. It was for the trial court to weigh the testimony of the parties and witnesses before the court and to conclude, from a perusal of the entire evidence, the intentions of the parties. The trial court's decision is sound and is based upon substantial evidence.

Brown v. Horn, 70 N.M. 303, 373 P.2d 542 (1962), cited by defendants in support of their contention, is of no consequence as that case is not in point. There the binder agreement requiring purchaser to pay the broker's commission was contingent upon consummation of the sale. The vendor and purchaser, by mutual agreement, failed to consummate the sale and the court found that the binder agreement was mutually rescinded. In the case at bar, the sale contract was consummated and then there was a breach. The breach of contract does not absolve the defendants from being bound by their agreement to pay the broker's commission.

That portion of the judgment awarding the broker his broker's commission is affirmed.

■ The trial court awarded plaintiff the sum of $214, representing the amount defendants received while they were operating the motel property. These damages are clearly allowable in lieu of damages for the fair rental value of the property during the time the same was occupied and operated by defendants.

In 8A Thompson on Real Property, 1963 Repl., Vendor and Purchaser, § 4478 at 454, the author states the rule for award of damages representing the rental value as follows:

"* * *. In an action at law for damages where, by reason of a breach of the contract, the plaintiff is wrongfully deprived of the use of his land, the rental value may be allowed as damages, since it is considered to be a fair average measure of compensation for a failure to perform the contract. * * *"

See also Melton v. Amar, supra; Graves v. Winer, 351 S.W.2d 193 (Ct.App.Ky.1961); Mayer v. Manufacturers Trust Company, 11 Misc.2d 359, 170 N.Y.S.2d 43 (1957).

There is a conflict between the findings of the trial court and its judgment with respect to special damages, which cannot be reconciled. Upon remand, the trial court can make its judgment conform to such findings as are appropriate.

The decision of the trial court is affirmed as to the breach of contract issue and its ruling with respect to the broker's commission. It is reversed as to its ruling on the question of attorney's fees and the issue of damages for breach of contract, as well as the award of special damages. The cause is, therefore, remanded to the trial court with instructions to set aside its judgment awarding attorney's fees and to proceed to determine damages in a manner consistent with this opinion.

Costs will be assessed equally against plaintiff and defendants

It is so ordered.

McMANUS, C. J., and MARTINEZ, J., concur.