1999-NMCA-008

971 P.2d 858

**Sam P. JONES and Sharon A. Jones, Husband and Wife, Plaintiffs–Counter–Defendants–Appellees,**

v.

**Ihn P. LEE and Philomena Lee, Husband and Wife, Defendants–Counterclaimants, Third–Party Plaintiffs, Third–Party Counter–Defendants–Appellants,**

**Sonja Waldin and The Vaughn Company, Inc., Realtors, Third–Party Defendants, Third–Party Counterclaimants–Appellees.**

**No. 19,054.**

Court of Appeals of New Mexico.

Nov. 16, 1998.

Rebecca E. Wardlaw, Rebecca E. Wardlaw, P.C., Albuquerque, for Appellees.

John A. Budagher, Budagher & Associates, Albuquerque, for Appellants.

Suzanne B. Kinney, Barlow & Kinney, P.A., Albuquerque, for Third–Party Counterclaimants–Appellees.

*OPINION*

DONNELLY, J.

{1} Ihn P. Lee and Philomena Lee (Buyers) appeal from judgments determining that they breached a contract to purchase an Albuquerque, New Mexico, residence and awarding compensatory and punitive damages to Sam P. Jones and Sharon A. Jones (Sellers), and compensatory damages to Sonja Waldin and The Vaughn Company, Inc. (Broker–Agents). Buyers raise four issues on appeal: (1) whether the trial court erred in determining the applicability and measure of damages to be awarded to Sellers for breach of a real estate contract; (2) whether the trial court's award of consequential and special damages was proper and supported by substantial evidence; (3) whether the trial court erred in awarding punitive damages; and (4) whether the trial court erred in finding that Buyers were required to pay a broker's commission to Broker–Agents. Affirmed in part and reversed in part.

*FACTS AND PROCEDURAL BACKGROUND*

{2} Following negotiations between the parties, on June 25, 1994, Buyers entered into a written real estate contract wherein they agreed to purchase Sellers' residence for $610,000. Sellers had listed the property for sale with Metro 100 Realtors. The purchase agreement entered into between Buyers and Sellers also listed Broker–Agents as Sellers' agents. Several weeks after signing the purchase agreement and tendering $6000 in earnest money, Buyers informed Sellers they were unable to consummate the agreement because of financial reasons. Buyers submitted a proposed termination agreement, dated August 23, 1994, to Sellers, whereby Buyers offered to void the contract in return for forfeiting their $6000 earnest money deposit.

{3} Sellers rejected the proposed termination agreement and when it became clear that Buyers were not going to honor the purchase agreement, Sellers relisted the property for sale. Sellers ultimately sold the property in November 1994 to another purchaser for $540,000, $70,000 below the contract price originally agreed upon by the defaulting Buyers.

{4} On April 12, 1995, Sellers filed suit against Buyers, seeking damages for breach of the real estate purchase agreement. Buyers filed several counterclaims against Sellers and a third-party claim against Broker–Agents. The counterclaims and third-party claim alleged, *inter alia,* that Sellers and their Broker–Agents misrepresented the fact that Waldin and The Vaughn Company were acting as agents for Sellers; that Sellers and their Broker–Agents were guilty of fraud; that Sellers and their Broker–Agents were negligent; that the contract should be declared void; and that Broker–Agents were guilty of unfair trade practices. Broker–Agents also filed a counterclaim against Buyers asserting that, as third-party beneficiaries, they were entitled to recover their real estate commission on the sale.

{5} Following a bench trial, the trial court dismissed Buyers' counterclaims against Sellers and the third-party claims against Broker–Agents. The trial court adopted findings of fact and conclusions of law and entered a judgment in favor of Sellers, awarding them $70,000 in damages for the loss resulting from the resale of the realty at a lower price; $300 for a heating warranty required to be furnished the new buyers; $1433 for a solar inspection required by the new buyers; $126 for a consultation on the solar system required by the new buyers; $2250 for interest payments on the first and second mortgages until resale; $17,156, plus gross receipts tax, for a broker's commission; $11,000 for architect and contractor fees incurred on a home Sellers had planned to build following the sale of their home; and $10,172 for interest claimed to have been lost by Sellers on the net proceeds of the contract sale price. The compensatory and special damages awarded by the trial court totaled $112,748.94. In addition to the compensatory and special damages listed above, the trial court also awarded $33,000 in punitive damages, together with costs and prejudgment interest. The total damages awarded to Sellers amounted to $157,118.94, plus court costs.

{6} In a separate judgment, the trial court also awarded Broker–Agents the sums of $18,300, plus $1,017.94 gross receipts tax, for their loss of the commission and $16,448 in attorney fees, together with gross receipts tax thereon.

*DISCUSSION*

I. *Applicability and Measure of Damages*

{7} Buyers argue that the trial court erred in awarding compensatory and special damages to Sellers and that it utilized an incorrect measure in calculating the amount of damages to be awarded. On appeal, a reviewing court will not overturn the trial court's findings of fact or award of damages if there is substantial and competent evidence to support such determination, or unless it is clearly demonstrated that the trial court employed an incorrect measure of damages. *See Ranchers Exploration & Dev. Corp. v. Miles,* 102 N.M. 387, 390, 696 P.2d 475, 478 (1985); *Wirth v. Commercial Resources, Inc.,* 96 N.M. 340, 346, 630 P.2d 292, 298 (Ct.App.1981).

{8} If a purchaser defaults on a contract to purchase realty, as a general rule, the seller has three alternative remedies. The sellers may (1) seek relief in equity for rescission, (2) offer to perform and bring an action for specific performance, or (3) elect to retain the realty and file suit seeking an award of damages. *See Van Moorlehem v. Brown Realty Co.,* 747 F.2d 992, 994 (10th Cir.1984); *see also* 12 *Thompson on Real Property* § 99.14(b) (David A. Thomas ed., 1994 & Supp.1996). Here, Sellers elected to sue for damages. Where a party elects to sue for damages resulting from a breach of land sale contract, the burden is on that party to present competent evidence to support such claim for damages. *See Bennett v. Price,* 692 P.2d 1138, 1140 (Colo.Ct.App. 1984). The rationale underlying the award of damages in a breach of contract case is to compensate the non-defaulting party with just compensation commensurate with his or her loss. *See Construction Contracting & Management, Inc. v. McConnell,* 112 N.M. 371, 378, 815 P.2d 1161, 1168 (1991); *Allen v. Allen Title Co.,* 77 N.M. 796, 798, 427 P.2d 673, 675 (1967).

{9} Buyers accurately note that New Mexico follows the "loss of the bargain" rule in determining damages resulting from a purchaser's breach of a contract to buy realty. *See Aboud v. Adams,* 84 N.M. 683, 688–89, 507 P.2d 430, 435–36 (1973). The "loss of the bargain" rule, recognized in *Aboud,* has been reaffirmed by our Supreme Court in *Hickey v. Griggs,* 106 N.M. 27, 30, 738 P.2d 899, 902 (1987), and *Wall v. Pate,* 104 N.M. 1, 2, 715 P.2d 449, 450 (1986). In *Hickey* the Court stated that when a purchaser breaches an executory real estate contract, the "vendor's measure of damages is the difference between the purchase price and the market value of the property at the time of the breach." *Hickey,* 106 N.M. at 30, 738 P.2d at 902; *see also Van Moorlehem,* 747 F.2d at 994 (proper measure of computing damages under New Mexico law based on purchaser's breach of contract to buy realty is loss of bargain rule, i.e., difference between the contract price and the market value at the time of the breach).

{10} Buyers argue that the trial court erred in calculating compensatory damages of $70,000 solely by determining the difference between the contract price agreed upon by the parties and the subsequent resale price of the property, without determining the fair market value of the property at the time of the breach. The parties stipulated that the fair market value on August 23, 1994, was $610,000; thus, Buyers argue that Sellers did not sustain any compensatory damages because "at the time of the breach . . . they held property worth exactly the same amount as the contract price[.]"

{11} Buyers are correct that in order to apply the loss of the bargain rule, the trial court must determine the value of the property at the time of the breach and compare that amount with the contract price. *See Aboud,* 84 N.M. at 689, 507 P.2d at 436; *see also* 5 Arthur L. Corbin, *Corbin on Contracts* § 1098A, at 535 (1964) (where purchaser defaults on purchase of realty, "the vendor's damages are the full contract price minus the market value of the land at date of breach and also minus any payment received").

{12} In *Aboud* our Supreme Court addressed an analogous situation to that presented here, observing:

[T]he loss of the bargain rule was not properly applied as there was no finding made of the market value of the land in question at the time of the breach. The trial court simply took the difference between "what the Adams had agreed to pay and what he later sold [the property] for[.]"

*Aboud*, 84 N.M. at 689, 507 P.2d at 436. The *Aboud* Court, quoting from 55 Am.Jur. *Vendor and Purchaser* § 526, at 920, further observed:

"[I]n this country in the case of a private sale of land, the right of the vendor to resell on account of the [purchaser's default] and recover any deficiency arising on the resale is generally denied."

84 N.M. at 689, 507 P.2d at 436. Due to the trial court's failure to determine the market value of the property at the time of the breach, the Court in *Aboud* remanded the case to the trial court to expressly determine the market value, noting:

While a subsequent sale is evidence of the market value at the time of breach, it is not conclusive and the court must properly establish the market value at such time. Thus, evidence of the resale price is properly admitted as one of the factors in determining market value.

*Id.* (citation omitted).

{13} Where the market value at the time of the breach is the same as the contract price, the sellers are generally limited to the recovery of only nominal damages or forfeiture of any earnest money, unless the sellers have established that they have also incurred special damages resulting from such breach. *See Torrance County Mental Health Program, Inc. v. New Mexico Health & Env't Dep't*, 113 N.M. 593, 601–02, 830 P.2d 145, 153–54 (1992) (in addition to general damages, non-breaching party in appropriate cases may be entitled to recover special damages); *Wall*, 104 N.M. at 2, 715 P.2d at 450 (in the event of a breach of a land sale contract, sellers are restricted to general damages computed under the loss of the bargain rule, unless the sellers prove that they have incurred special damages); *see also Van Moorlehem*, 747 F.2d at 994 (nonbreaching vendor of realty is entitled to consequential damages incurred in attempting to resell residence); *Melfi v. Goodman*, 73 N.M. 320, 325–26, 388 P.2d 50, 53–54 (1963) (absent existence of equitable grounds, vendor of realty may retain moneys paid by defaulting vendee under contract to purchase realty); *Turner v. Benson*, 672 S.W.2d 752, 755 (Tenn.1984) (special damages may be awarded even if the contract price and the fair market value at the time of breach are equal). *See generally* 5 Corbin, *supra*, § 1098A, at 535 ("Costs of making a resale may be allowed as consequential damages.").

{14} In the instant case, like *Aboud*, there was no finding determining the date of breach or the market value of the property at the time of the breach. These determinations are essential factors in applying the loss of the bargain rule and in calculating the amount of general damages resulting from a purchaser's breach of a real estate contract. Thus, we conclude that the cause must be remanded for adoption of express findings of fact in accordance with the rule.

{15} We noted above that the parties stipulated to the fair market value of the property on August 23, 1994. Also, while the date agreed upon for closing is generally the time for measuring the property's value at the time of the breach, *see* 14 Richard R. Powell, *Powell on Real Property* ¶ 882[2], at 81–218 (Patrick J. Rohan, former rev. ed.1998), during oral argument on appeal, Sellers stated that the breach occurred on August 23, 1994, when Buyers tendered a proposed termination agreement.

{16} The general rule is that stipulations are ordinarily binding on the parties absent fraud, mistake, improvidence, material change in circumstances, or unless equitable considerations require otherwise. *See Barker v. Barker*, 93 N.M. 198, 199, 598 P.2d 1158, 1159 (1979); *Esquibel v. Brown Constr. Co.*, 85 N.M. 487, 490, 513 P.2d 1269, 1272 (Ct.App.1973). *See generally* 4 Richard A. Lord, *Williston on Contracts* §§ 1, 2 (1974).

{17} As indicated in *Aboud*, 84 N.M. at 689, 507 P.2d at 436, a subsequent sale of land may be considered evidence of the market value at the time of breach and should be considered with other evidence bearing on the issue. It is unclear from the appellate record, including our questioning and the attorneys' answers at oral argument, for what purpose and to what effect the parties agreed to the stipulation before the trial court concerning market value. It shall be for the trial court on remand to determine what effect to give the stipulation and to otherwise determine the market value at the time of breach, to compare that to the contract sale price, and to calculate general damages, if any.

## II. *Award of Special Damages*

{18} Buyers also challenge the trial court's award of special damages. Special damages may be awarded by the fact finder in a breach of contract case if the damages are shown to have resulted as the natural and probable consequence of the breach and, at the time of the formation of the contract, the breaching party reasonably knew or should have anticipated from the facts and circumstances that the damages would probably be incurred. *See Camino Real Mobile Home Park Partnership v. Wolfe*, 119 N.M. 436, 443, 446, 891 P.2d 1190, 1197, 1200 (1995) (party found to have breached contract is liable for general damages and special or consequential damages reasonably foreseeable as a result of the breach); *Wall*, 104 N.M. at 2, 715 P.2d at 450 (special damages may be awarded if the loss was foreseeable by breaching party at time of contracting). The parties are presumed to have contemplated the ordinary and natural incidents or consequences of nonperformance of the contract. *See E & B Specialties Co. v. Phillips*, 86 N.M. 331, 333, 523 P.2d 1357, 1359 (1974). *See generally* Restatement (Second) of Contracts § 351(1) (1981).

### 1. *Solar System and Heating Warranty*

{19} Buyers challenge the trial court's special damages award of $1433 for an inspection of the solar system, $126 for a consultation on the solar system, and $300 for a heating warranty incident to the resale of the residence. The trial court found that these damages were reasonably foreseeable by a person in Buyers' situation when the contract was formed. We agree. Whether a situation is reasonably foreseeable is generally a question of fact to be determined by the fact finder from the evidence and circumstances. As observed in *Camino Real Mobile Home Park Partnership*, 119 N.M. at 446, 891 P.2d at 1200, the foreseeability of damages rule "anticipates an explicit or tacit agreement by the defendant 'to respond in damages for the particular damages understood to be likely in the event of a breach[.]' " (Quoting *Wall*, 104 N.M. at 2, 715 P.2d at 450.) Here, although the purchase agreement between Buyers and Sellers did not specifically require an inspection of the solar system or consultation regarding its effectiveness, nevertheless, Paragraph 15 of the residential purchase agreement indicated that Sellers, at closing, would see to it that the heating and solar system would be "in the same condition as of the date of acceptance, normal wear and tear excepted and subject to the provisions of Paragraphs 10 and 12" of the agreement. Since the contract contemplated that an inspection would be made of the solar and heating systems, and these are major components of the residence, there was evidence in the record from which the trial court could reasonably determine that inspection of these systems and consultation with a specialist concerning such systems would be a reasonably foreseeable requirement imposed by a future purchaser. Similarly, our review of Paragraph 10 of the real estate sales agreement indicates the existence of evidence from which the trial court could find that Sellers may be required to pay for a heating warranty from a future purchaser. Paragraph 10 is a paragraph in the form contract indicating a list of warranties, the costs of which are sometimes borne by the sellers. The existence of this list in the contract is evidence upon which the trial court could find that the cost of the warranty was reasonably foreseeable.

### 2. *Interest*

{20} After Buyers' default, Sellers relisted the property for sale and continued

making payments on the first and second mortgages on the property until the subsequent sale. Sellers presented evidence that the interest payments on the mortgages totaled $4500. The trial court found that the mortgage interest that Sellers continued to pay on their residence following the breach by Buyers was foreseeable. However, the trial court acknowledged that Sellers enjoyed the benefit of the continued occupancy of the residence and therefore reduced this award of interest by one-half.

{21} The trial court correctly determined that Sellers may be entitled to damages resulting from the payment of mortgage interest due to Buyers' breach of contract to purchase realty because such damages were reasonably foreseeable. Where a buyer defaults on a residential purchase agreement, thus forcing the seller to replace the property on the market for sale, the lapse of time between the original closing date and a subsequent sale may give rise to the incurring of special damages by the seller. *See Shaeffer v. Kelton*, 95 N.M. 182, 187, 619 P.2d 1226, 1231 (1980) (after default by purchaser plaintiff may recover interest payments on construction loan for period plaintiff sought to locate another buyer); *see also Karakehian v. Boyer*, 900 P.2d 1273, 1281 (Colo.Ct.App.1994) (interest on first and second mortgages held foreseeable as damages).

{22} Buyers also challenge the trial court's award of $10,172 for interest alleged to have been lost on the net proceeds of the sale of the property. The trial court computed this award by determining a reasonable rate of interest that Sellers could have obtained for the four-month period between Buyers' breach and resale to the new buyers on the full purchase price contained in the real estate purchase agreement, less closing costs and repayment of mortgages. Buyers contend that interest computed in this way amounts to double recovery under *Van Moorlehem*, 747 F.2d at 994. On this record, we cannot tell whether double recovery or indeed any improper recovery will result if the award of $10,172 is allowed to stand. We note that the trial court's award of prejudgment interest ran only from the date of trial, and not from the date the claim

accrued, and is proper for an award of prejudgment interest under NMSA 1978, § 56-8-3 (1983). *See Sunwest Bank v. Colucci*, 117 N.M. 373, 377, 872 P.2d 346, 350 (1994). It is unclear from the record whether the trial court's award of prejudgment interest was under Section 56-8-3 or NMSA 1978, § 56-8-4 (1993). Upon remand, the trial court is directed to reconsider the award of $10,172 in light of *Van Moorlehem* and in relation to its award, if any, of compensatory damages and prejudgment interest.

### 3. *Fees Incident to Separate Lot*

{23} The trial court also awarded $11,000 special damages for architect's and contractor's fees incurred by Sellers in planning to build a new home on a lot acquired by Sellers in 1992.

{24} Sellers' response to Buyers' request for admissions conceded that prior to 1995, Sellers did not notify Buyers of the existence of the lot purchased by them in December 1992. Sellers admitted at trial that they did not know whether Buyers were aware of Sellers' strained financial status or the fact that they had previously purchased a lot on which they contemplated constructing a new house. In preparation for the construction of a new house, Sellers hired an architect and consulted with a contractor, thereby incurring expenses for $9000 and $2000 respectively. Sellers admitted that they had originally paid $150,000 for the lot and subsequently sold it for $194,000. We agree with Buyers that there is insufficient evidence in the record to establish that the architect's and the contractor's expenses incurred by them prior to the execution of the 1995 purchase agreement were reasonably foreseeable to Buyers when the parties executed the agreement. *See Wall*, 104 N.M. at 2, 715 P.2d at 450 (special damage arising from breach of contract must be expenses which are not expected to occur regularly to other plaintiffs and which are shown to have been within the contemplation of the parties at the time of the formation of the contract). As such, Sellers are not entitled to recover their claim for these fees.

III. *Award of Punitive Damages*

{25} The trial court awarded punitive damages against Buyers for their conduct in attempting to persuade Sellers to agree to terminate the contract. The trial court found, among other things:

23. [Buyers] and their family members engaged in acts of extremely poor judgment toward [Sellers] in their efforts to persuade [Sellers] to agree to a termination of the contract. One of these acts, [Buyers'] and their son's attempting to contact Mrs. Jones at her house, reasonably frightened Mrs. Jones but did not intimidate [Sellers] into agreeing to termination of the contract.

24. [Buyers] made misrepresentations of fact regarding their financial situation in their efforts to persuade [Sellers] to agree to a termination of the contract.

25. At the time of their breach of the contract, [Buyers] had approximately $577,000 in a checking account, and earned income of more than $16,000.00 per month, plus bonuses.

26. [Buyers'] failure to consummate the contract to purchase was wanton, utterly reckless and in utter disregard of their contractual obligations, and was sufficient to warrant the imposition of punitive damages. [Buyers'] conduct evidenced such a cavalier attitude toward their own obligations and the harm inflicted on [Sellers] as to establish their intent to harm [Sellers].

27. An equitable and reasonable award of punitive damages is $33,000.00.

{26} Buyers argue that the punitive damage award is unsupported by substantial evidence and is incorrect as a matter of law because it was linked to an incorrect computation of compensatory damages. Absent proof that the conduct of a party resulting in a breach of contract was malicious, fraudulent, oppressive, or recklessly committed, with a wanton disregard of the other party's rights, an award of punitive damages is improper. *See McConnell*, 112 N.M. at 375, 815 P.2d at 1165; *see also* UJI 13–861 NMRA 1998; *Albuquerque Concrete Coring Co. v. Pan Am World Servs., Inc.*, 118 N.M. 140, 143, 879 P.2d 772, 775 (1994). Because

the purpose of punitive damages is to punish and deter improper conduct, there must be some evidence of a culpable mental state on the part of the party who has caused the breach. *See McConnell*, 112 N.M. at 375, 815 P.2d at 1165. Thus, absent a showing that the breaching party intended to inflict harm on the non-breaching party or conduct which violates community standards of decency, the actions of the breaching party will not serve as a basis for an award of punitive damages. *See id.*

{27} In explaining the punitive damages award, the trial court stated that the award was "approximately a third of the compensatory damages." The trial court found that Buyers "made intentional misrepresentations of fact to Norwest Mortgage regarding [Buyers'] financial ability to close the transaction in order to be relieved of their obligation under the contract" and that "[a]t the time of their intentional breach, [Buyers] had sufficient capital and income to finance the purchase of the property."

{28} Our review of the record indicates a factual basis from which the trial court could properly assess punitive damages against Buyers. The trial court found that the conduct of Buyers included acts intended to persuade Sellers to agree to terminate the agreement. Additionally, despite Sellers' request that Buyers communicate with them through their attorneys or Broker–Agents, Buyers attempted to contact them directly and, on one occasion, severely frightened Mrs. Jones by pounding on the front door of the residence so forcibly that the lock on the door to the residence had to be replaced.

{29} Because the trial court, in assessing the award of punitive damages against Buyers, stated that it based the award of punitive damages, in part, on its computation of compensatory damages, and we have determined that the award of compensatory damages was not calculated on the "loss of the bargain rule," we remand the issue of the award of punitive damages to the trial court for the adoption of additional findings of fact and conclusions of law concerning the amount, if any, of punitive damages, after the trial court

calculates its award of damages, if any, based on loss of the bargain.

## IV.  Real Estate Commission

{30}  The trial court awarded special damages to Sellers for Broker–Agents' commission owed by them in the amount of $18,300, plus gross receipts tax. Buyers claim they have no obligation to pay a real estate commission to Broker–Agents because Broker–Agents did not have a written listing agreement for the property, as required by NMSA 1978, § 47–1–45 (1949). We find this argument unpersuasive.  It is undisputed that Sellers entered into a written listing agreement with Metro 100 Realtors, Inc. The trial court properly found that Broker–Agents were the subagents of Sellers.  Buyers admitted that Waldin was an agent for The Vaughn Company.  Moreover, the listing agreement signed by Sellers stated that the broker could list the property on the multiple listing index and "may offer subagency to other brokers ... [i]n return for procuring a purchaser for the property [and] Broker shall pay 3% of [the] sales price plus applicable gross receipts tax to the Sub-agent."  While Buyers correctly note that agreements for the sale of realty must be in writing, there is no requirement that agreements between brokers to share commissions be in writing.  Moreover, such authority was expressly contained in the original listing agreement and in the real estate sales agreement executed by Buyers.  See Hapsas Realty, Inc. v. McCoun, 91 N.M. 659, 660, 579 P.2d 785, 786 (1978).  In Otero v. Buslee, 695 F.2d 1244, 1250–51 (10th Cir.1982), the court observed that New Mexico follows the rule that a broker is entitled to his or her commission even if the purchaser, after signing a real estate purchase agreement, defaults on the contract.  See also Hayes v. Reeves, 91 N.M. 174, 178, 571 P.2d 1177, 1181 (1977); Stewart v. Brock, 60 N.M. 216, 225–26, 290 P.2d 682, 687 (1955).  See generally Sonja A. Soehnel, Annotation, Modern View as to Right of Real Estate Broker to Recover Commission from Seller–Principal Where Buyer Defaults Under Valid Contract of Sale, 12 A.L.R.4th 1083 (1982).

{31}  We affirm the trial court's award of the real estate commission, plus gross receipts tax to Broker–Agents.  However, our review of the record indicates that the trial court in entering a separate judgment for Broker–Agents duplicated a similar award included in the judgment awarded to Sellers. Thus, on remand, the trial court should enter an amended judgment directing that the commission earned by Broker–Agents be paid by Sellers to Broker–Agents out of the amount of damages recovered by Sellers.

## CONCLUSION

{32}  For the reasons discussed herein, the cause is remanded for redetermination of the amount of compensatory and special damages, and/or the award of punitive damages, consistent with the matters discussed herein.  On remand, in accordance with the written real estate agreement, the trial court should also award Sellers and Broker–Agents appropriate attorneys' fees for their services incident to this appeal.

{33}  IT IS SO ORDERED.

PICKARD and BOSSON, JJ., concur.