## GEORGE T. COSTELLO AND ANOTHER v. ROBERT W. JOHNSON AND ANOTHER.

121 N. W. (2d) 70.

April 5, 1963—No. 38,715.

*Bertie & Bettenburg,* for appellants.
*Sanborn, Jackson & Rice* and *Worth K. Rice,* for respondents.

NELSON, JUSTICE.

This appeal involves an action by plaintiff-vendors to recover $3,500 damages for breach of a contract for sale of certain real estate known as 1125 Ashland Avenue, St. Paul. The contract price was $24,500.

The contract was signed March 23, 1959, and defendants then paid $500, the balance being payable in cash on execution and delivery of a warranty deed. The sale price included certain household appliances, carpets, drapes, and other items valued at approximately $2,200. The contract provided that possession should be surrendered on the closing date, April 29, 1959, and also provided:

"* * * This sale is subject to purchasers being able to secure an F.H.A. insured mortgage on the above described premises in the amount of $19,400.00 payable over a period of 30 years.

\*     \*     \*     \*     \*

"Time is of the essence hereof, and *if such purchaser shall fail to perform this contract within the time herein limited, said seller or his agent shall retain the earnest money hereof as a part of his just compensation for such failure, and may declare this contract terminated and proceed for damages, or specific performance against such purchaser.* Action to enforce this contract shall be commenced within ninety (90) days from the date of forfeiture of this contract." (Italics supplied.)

The vendors apparently were unable to establish the market value of the premises required to insure obtaining the $19,400 mortgage and on May 7, 1959, the vendees refused further performance. No cancellation proceedings were instituted by plaintiffs in accordance with the statute, but they notified defendants by registered mail that the contract was terminated in accordance with its terms and thereafter commenced this action to recover general damages in the amount of $2,046.62 and special damages including interest they were required to pay, allegedly directly due to defendants' breach; attorneys' fees incurred in attempting to close the transaction pursuant to the contract and in the prosecution of this action; the real estate brokers' commissions payable on a subsequent sale in excess of the commissions payable on making the contract; and utilities, insurance premiums, and miscellaneous expenses incurred prior to commencement of the action. In their complaint plaintiffs admitted that defendants had paid $500, which they would be entitled to credit against the damages claimed.

Defendants' answer admitted the making of the contract and that they had made the earnest money payment, but alleged as an affirmative defense that the sale was subject to their being able to secure the F.H.A. loan of $19,400, and that plaintiffs had failed to comply with a Federal statute and pertinent rules and regulations promulgated pursuant thereto, requiring sellers to deliver a written statement of an F.H.A. appraisal to vendees prior to sale of the premises.

Prior to trial defendants moved to strike all allegations in the complaint relating to special damages. After a hearing the court ordered such allegations stricken, with the exception of plaintiffs' claims for

attorneys' fees incurred in attempting to close the transaction and in the prosecution of this action.

At the beginning of trial plaintiffs were permitted to amend their complaint to ask $3,500 in general damages, and defendants were permitted to amend their answer to allege that the contract had never been terminated and to demand that their earnest money payment be returned to them.

After trial the lower court found:

"That on or about May 7, 1959, defendants breached the said contract by failing and refusing to perform; that plaintiffs at all times were ready, willing and able to perform the same; and that defendants had no legal excuse for such breach of the said contract."

It further found that plaintiffs incurred attorneys' fees in the amount of $90 in an effort to carry out the contract prior to instituting the action; that because of the breach of the contract by defendants plaintiffs were further damaged in the sum of $500; and that earnest money paid by defendants to plaintiffs should be set off against these damages leaving plaintiffs entitled to judgment against defendants in the sum of $90.

Plaintiffs moved for amended findings or a new trial on the issue of damages only on the grounds that the court erred in failing to apply the proper measure of damages and that the decision was not justified by the evidence and was contrary to law. This motion was denied and plaintiffs appeal from the judgment entered, contending that the trial court did not apply the proper measure of damages and that there is no substantial evidence to support the trial court's findings thereon. Defendants, while originally contending that they were justified in refusing to perform, do not appeal.

It appears that shortly before the parties entered into the contract plaintiff Julia C. Costello had obtained an F.H.A. "commitment for insurance" showing an appraised value of $22,000 (justifying a loan of $19,400). A similar form was offered at the trial by plaintiffs and was received as an exhibit. Austin J. Baillon, the real estate agent who represented plaintiffs in the negotiations with defendants prior to the making of the contract, had also pointed to the appraised value of $22,000 repeatedly before the sale. Mrs. Costello testified that she exhibited the

commitment to defendants for the purpose of showing them that the property, including the personal property, was worth the contract price of $24,500. She further testified that the contract price was established on the basis of the appraisal shown on the commitment, and that the property had depreciated to $20,000 on May 7, 1959, the date defendants refused to perform. However, Mr. Costello testified that they resold the same real estate and personal property for $23,000 in July 1959 and had received the full price before they vacated the premises on July 15. (At all times until that date they enjoyed exclusive possession of the property.) Disclosure of the resale price was reluctantly made only on cross-examination and upon inquiry by the court.

Mr. Baillon, perhaps mindful of the resale price, did not testify that the property had depreciated in value between the date of the contract for sale and May 7, 1959.

Plaintiffs also called two expert witnesses who qualified as experienced appraisers. Each testified that he had appraised the real estate in question at $18,000 in November 1958 and that the value did not change between that time and May 7, 1959.

It is a well-established rule in this state that upon a breach of contract the injured party must use reasonable diligence to minimize his damages. Lanesboro Produce & Hatchery Co. v. Forthun, 218 Minn. 377, 16 N. W. (2d) 326. It is also clear that here, as in the ordinary civil action, plaintiffs have the burden of proving every essential element of their case, including damages, by a fair preponderance of the evidence. Carpenter v. Nelson, 257 Minn. 424, 101 N. W. (2d) 918.

Plaintiffs cite Home Counsellors, Inc. v. Folta, 246 Minn. 481, 75 N. W. (2d) 417, as controlling on the measure of damages. In that case the vendor brought an action for specific performance or for damages. We found that the trial court committed prejudicial error in finding plaintiff's damages to be $12,400, the entire balance due on the purchase price, and in ordering judgment in the alternative requiring that defendant specifically perform or plaintiff have judgment for $12,400. We said that damages for breach of contract for the entire balance of the purchase price had no basis either in fact or in law since

under the alternative provision for judgment defendants would be compelled to pay the full purchase price and still not have the property. We held that the measure of damages for a breach, by the purchaser, of a contract of purchase is the difference between the contract price and the actual or market value of the property at the time of the breach, including any expenses necessarily incurred by the seller in his effort to carry out the contract, less any sums paid by the purchaser on the contract price. In that case we followed Wilson v. Hoy, 120 Minn. 451, 139 N. W. 817, in which we had said that the measure of damages applicable to the facts there was the difference between the contract price and the actual or market value of the land at the time of the breach, and not the difference between the contract price and the cost of the property to the vendor. The rule announced in these cases seems to be universal and is not questioned by defendants.

■ In the instant case the purchase agreement provided that if defendants failed to perform, the earnest money payment of $500 might be retained as a part of the just compensation for such nonperformance. It further provided that upon defendants' failure to perform plaintiffs could declare the contract terminated and proceed for damages or specific performance against purchasers. In Nostdal v. Morehart, 132 Minn. 351, 157 N. W. 584, this court stated the ordinary measure of damages for a breach by the vendor in a contract to convey land, but also said that there is no reason why different remedies and rules of liability may not be fixed by the parties to the contract should either vendor or vendee fail to perform.

Defendants do not contend that the provision for retention of the earnest money payment constituted a penalty but claim in their brief that it set forth liquidated damages. Mr. Justice Matson stated the rule which applies to provisions for liquidated damages in this state in Gorco Const. Co. v. Stein, 256 Minn. 476, 481, 99 N. W. (2d) 69, 74:

"* * * this court has long regarded provisions for liquidated damages as prima facie valid on the assumption that the parties in naming a liquidated sum intended it to be a fair compensation for an injury caused by a breach of contract and not a penalty for nonperformance.

"Although favorably disposed to giving effect to a provision for liq-

uidated damages, this court has not hesitated, however, to scrutinize a particular provision to ascertain if it is one for a penalty or one for damages. *In determining the issue neither the intention of the parties nor their expression of intention is the governing factor. The controlling factor, rather than intent, is whether the amount agreed upon is reasonable or unreasonable in the light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances.*

\* \* \* \* \*

"\* \* \* This court has held that where the actual damages resulting from a breach of the contract cannot be ascertained or measured by the ordinary rules, a provision for liquidated damages not manifestly disproportionate to the actual damages will be sustained. On the other hand, when the measure of damages resulting from a breach of contract is susceptible of definite measurement, we have uniformly held an amount greatly disproportionate to be a penalty." (Italics supplied.)

However, since defendants have not appealed from the damages awarded, which exceeded the earnest money payment, we must assume that the provision for retention of the downpayment upon breach by defendants was not intended by the parties as an anticipatory agreement for liquidated damages. The contract provision permitting plaintiffs to declare the contract terminated upon defendants' default and thereafter to proceed for damages also indicates that the parties did not intend to contract with respect to liquidated damages.

■ It is clear that the principles applied to provisions for liquidated damages in the Gorco case do not conflict with the measure-of-damages rule laid down in Wilson v. Hoy, *supra,* and Home Counsellors, Inc. v. Folta, *supra,* and that in case of breach of a contract for sale of real estate, whether or not there is a contractual provision for liquidated damages, the law adopts as its guiding principle "that the injured party is entitled to receive a fair equivalent for the actual damages necessarily resulting from failure to perform the contract and no more." Gorco Const. Co. v. Stein, 256 Minn. 476, 482, 99 N. W. (2d) 69, 74.

■ Plaintiffs contend that all evidence relating to the resale should have been rejected and that the court should have closed its eyes to all

evidence of value except that offered by Mrs. Costello and the two experts—excluding even the real estate broker's testimony. In case of a private sale of land courts in this country have generally denied the right of the vendor to resell on account of the purchaser and then recover from him any deficiency arising out of the resale. See, 55 Am. Jur., Vendor and Purchaser, § 526; 92 C. J. S., Vendor and Purchaser, § 537e(3); Cowdery v. Greenlee, 126 Ga. 786, 55 S. E. 918, 8 L. R. A. (N. S.) 137. However, it seems to be the general rule that where a resale is made upon as favorable terms and under as favorable circumstances as the original sale, and is made within a reasonable time and after proper notice to the purchaser, the amount received on the resale may properly be admitted as evidence—though not conclusive—of the market value of the land for the purpose of fixing damages. 55 Am. Jur., Vendor and Purchaser, § 526. Clearly, evidence of a resale within the time in which it occurred in the instant case was admissible.

■ Plaintiffs further contend that the testimony of their experts was not controverted by appraisal testimony on the part of defendants and must therefore be accepted at face value. We have heretofore held that uncontradicted testimony does not compel a finding in accordance therewith. Barnes v. Verry, 154 Minn. 252, 191 N. W. 589, 31 A. L. R. 707; 7 Minn. Dig. § 594. See, Elzig v. Gudwangen (8 Cir.) 91 F. (2d) 434. Its weight and the credibility of the witnesses is usually for the trier of fact to determine, and it is not compelled to believe any witness merely because his testimony is uncontradicted. This is particularly true where there are other facts in evidence which refute or modify the uncontroverted testimony or where testimony is obviously untrue.

■ The burden is on plaintiffs, as appellants, to show that there is no substantial evidence reasonably tending to sustain the trial court's findings. If the evidence as a whole tends to support the findings, they should not be disturbed. We are governed by the rule that the findings of the trial court, as the trier of facts, are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence. This rule applies whether an appeal is from a judgment or an order granting or denying a new trial. Bolduc v. New York Fire Ins. Co. 244 Minn. 192, 69 N. W.

(2d) 660; Lipinski v. Lipinski, 227 Minn. 511, 35 N. W. (2d) 708; Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N. W. (2d) 273; Miller v. Snedeker, 257 Minn. 204, 101 N. W. (2d) 213.

Viewing the provisions of the purchase agreement and the testimony contained in the record and supplemental record before us, we conclude that plaintiffs' damages were not unreasonably limited by the findings of the trial court.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.