DANIEL R. FRANK AND ANOTHER v.
PAUL W. JANSEN AND ANOTHER.

226 N. W. 2d 739.

February 7, 1975—No. 44748.

*Lindquist & Vennum, David G. Newhall,* and *Mark R. Johnson,* for appellants.

*Stringer, Donnelly, Courtney, Cowie & Rohleder* and *Owen L. Sorenson,* for respondents.

Heard before Otis, MacLaughlin, and Knutson, JJ., and considered and decided by the court en banc.

KNUTSON, JUSTICE.*

This is an appeal from a judgment entered in favor of plaintiffs for $232.27 and from an order denying their motion for amended findings of fact and conclusions of law. Plaintiffs base their right to recover upon a breach of contract for the sale of real estate.

On July 20, 1970, plaintiffs, Daniel R. and Ethel D. Frank, entered into an agreement to sell their residence at 575 Mt. Curve Boulevard, St. Paul, to defendants, Paul W. and Betty L. Jansen, for the sum of $48,500. A neighbor of the Franks prepared the purchase agreement, using a Miller-Davis printed form. The purchase agreement, which is the vital evidence in this case, is reproduced below.

---

* Retired Chief Justice acting pursuant to Minn. St. 2.724.

DEF. EXHIBIT A

Form 1762 Miller-Davis Co., Minneapolis

$ 2,000.00

_____ July 20 _____ 19 70

Received of ___ PAUL W. JANSEN and BETTY LOU JANSEN ___

___ Two Thousand and no/100 ___ Dollars as a guarantee of good

faith accompanying offer of $ 48,500.00 on terms as follows: $11,500 on or before.
NOV 1, 1970. and the balance of $35,000 to be paid in 180 equal
monthly installments together with interest at 8% per annum
commencing Sept, 1970 _____ for the purchase of 575 MT CURVE BLVD.

_____ subject to final payment prior purchase

This offer is subject to owner's approval; if accepted, the above amount will apply as a part of purchase price and if refund the above amount will be refunded.

If offer is accepted and purchaser refuses to fulfill the above stated conditions the $ _____ will be forfeited to

I HEREBY MAKE THIS OFFER

Paul W. Jansen

Betty Lou Jansen

PURCHASER

_____

SELLER

BY _____

AGENTS

---

Items to be included
without additional charge

WASHER & DRYER
FREEZER
WINDOW AIR CONDITIONER
PING PONG TABLE
ALL DRAPES & CURTAINS
STOVE & REFRIG
CALCINATOR
FIREPLACE FIXTURES
GARAGE OPERATORS
BED SPREADS.

NOT INCLUDED
TO BE REMOVED BY
PRESENT OWNER

DINING ROOM and
MASTER BDRM LIGHT
FIXTURE

Real estate taxes due an
payable in 1970 to be
paid by seller.

Paul W. Jansen

It will be noted that the purchase agreement recites that $2,000 has been received from defendants as a "guarantee of good faith." The clause in the printed contract calling for a forfeiture of a sum of money in case the purchaser refuses to fulfill the contract was left blank.

On October 23, 1970, defendants advised plaintiffs that they did not intend to purchase the property. The payment due on November 1, 1970, was not made.

In October 1970, defendants assisted plaintiffs in an unsuccessful attempt to resell the property without the aid of a realtor. The property was listed with Jambor Realty of St. Paul on November 14, 1970, and relisted with Rubin Realty Company of St. Paul on April 20, 1971. During the period from October 24, 1970, to July 23, 1971, extensive efforts were made to resell the property but no offers were received.

On July 24, 1971, James L. Diedrich offered to purchase the property, and on the following day Diedrich and plaintiffs entered into a purchase agreement for the sum of $43,700.

Prior to learning that defendants did not intend to go through with the purchase agreement, plaintiffs leased an apartment to which they moved on November 8, 1970. The Mt. Curve property remained vacant during the attempts to sell it. During the time the premises were vacant, plaintiffs continued to pay the real estate taxes, utilities, snow removal services, and insurance. They also incurred expenses for abstracting fees and newspaper advertisements connected with the attempts to resell the property. They also claim the right to recover legal fees in connection with the transaction with the Jansens.

The trial court held that the downpayment of $2,000 paid by defendants and retained by plaintiffs constituted liquidated damages. It also held that plaintiffs were entitled to recover abstracting fees and sums expended for newspaper advertisements, but allowed no other damages. In addition to finding that the downpayment of $2,000 constituted liquidated damages and that plain-

tiffs were entitled to recover the abstracting fees and cost of advertising, the court found as a fact that the purchase price of the realty was $48,500 and that the fair market value of the property at the time of the breach by defendants was $43,700.

Plaintiffs' motion for amended findings of fact and conclusions of law, in which they sought to increase the damages, was denied on September 25, 1973, judgment was entered on November 2, 1973, and this appeal followed.

Two issues are presented on this appeal, namely: (1) Does the evidence sustain the court's finding that the $2,000 downpayment made by defendants and retained by plaintiffs constituted liquidated damages? (2) Was the court correct in holding that only the abstracting fees and the cost of newspaper advertisements in an attempt to mitigate damages were recoverable?

■ In 5B Dunnell, Dig. (3 ed.) § 2536, we find the following definition of liquidated damages:

"Liquidated damages are damages the amount of which has been determined by anticipatory agreement between the parties. The purpose of a penalty is to secure performance, while the purpose of stipulating damages is to fix the amount to be paid *in lieu of performance*. The term 'liquidated damages' signifies the amount of damages which the parties to a contract stipulate and agree, when the contract is entered into, shall be paid in case of breach. There must be a reasonable basis in fact for specified liquidated damages, and fair compensation for actual damages sustained is the test." (Italics supplied.)

In the early case of Higbie v. Farr, 28 Minn. 439, 442, 10 N. W. 592, 593 (1881), we said:

"* * * In all cases where a party relies on the payment of liquidated damages as a discharge, it must clearly appear that they were to be paid and received absolutely *in lieu of performance*." (Italics supplied.)

Many of the cases dealing with this subject matter discuss the difference between a penalty, which is usually unenforceable,

and liquidated damages, which, if reasonable, are enforceable and determine the extent of liability. See, 22 Am. Jur. 2d, Damages, § 212.

In Christianson v. Haugland, 163 Minn. 73, 75, 203 N. W. 433, 434 (1925), we said:

"The purpose of a penalty is to secure performance, while the purpose of stipulating damages is to fix the amount to be paid *in lieu of performance*." (Italics supplied.)

In McGuckin v. Harvey, 177 Minn. 208, 210, 225 N. W. 19, 20 (1929), following Christianson, we said:

"* * * [W]e think that the parties properly might stipulate or liquidate their damages as they did, and their agreement should be given effect."

In Schutt Realty Co. v. Mullowney, 215 Minn. 340, 346, 10 N. W. 2d 273, 276 (1943), we quoted with approval the following from 15 Am. Jur., Damages, § 240, the substance of which is now found in 22 Am. Jur. 2d, Damages, § 212:

"The term 'liquidated damages' signifies the damages the amount of which the parties to a contract stipulate and agree, when the contract is entered into, shall be paid in case of breach. It is well settled that the parties to a contract may stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement. A stipulation of this kind is enforceable, at least in those cases where the damages which result from a breach of the contract are not fixed by law or are in their nature uncertain and where the amount stipulated does not manifestly exceed the injury which will be suffered."

In Zirinsky v. Sheehan, 413 F. 2d 481, 485 (8 Cir. 1969), certiorari denied, 396 U. S. 1059, 90 S. Ct. 754, 24 L. ed. 2d 753 (1970), the Court of Appeals, in discussing Minnesota law, said:

"In Minnesota, as elsewhere, a provision for liquidated dam-

ages is generally held to be a convenient substitute as a reasonable forecast of general damages."

Our attention has been called to Witt v. John Blomquist, Inc. 249 Minn. 32, 34, 81 N. W. 2d 265, 267 (1957), where we said:

"Our conclusion is not in conflict with the rule that, where earnest money has been paid to an agent by a purchaser of real estate pursuant to the terms of a contract which provides that the earnest money shall be forfeited to the vendor in the event the purchaser fails to perform the contract, and where such provision cannot be construed as a penalty, the vendor is entitled to retain such earnest money as liquidated damages if the purchaser does fail to complete the transaction."

It is true that the reference to liquidated damages in the above quotation might indicate that where the seller retains the downpayment of a purchaser it is to be considered as liquidated damages in all cases. However, that construction of the language we used is misleading. The case did not involve the question of liquidated damages as does the case now before us, only the right to retain the downpayment upon a breach of contract.

In the case of Costello v. Johnson, 265 Minn. 204, 121 N. W. 2d 70 (1963), the buyers raised a contractual provision calling for forfeiture of earnest money as a defense in a seller's action for actual damages. We followed the language of Higbie v. Farr, *supra,* looking at the language of the contract, to determine whether the parties had actually intended the retention of earnest money to deprive the seller of all other remedies or whether he had a right to elect remedies. The relevant contractual provision in Costello was as follows:

"Time is of the essence hereof, and *if such purchaser shall fail to perform this contract within the time herein limited, said seller or his agent shall retain the earnest money hereof as a part of his just compensation for such failure, and may declare this contract terminated and proceed for damages, or specific performance against such purchaser."* 265 Minn. 206, 121 N. W. 2d 73.

We held that this provision did not constitute an agreement for liquidated damages and would not bar the seller's action for actual damages. We said:

"However, since defendants have not appealed from the damages awarded, which exceeded the earnest money payment, we must assume that the provision for retention of the downpayment upon breach by defendants was not intended by the parties as an anticipatory agreement for liquidated damages. The contract provision permitting plaintiffs to declare the contract terminated upon defendants' default and thereafter to proceed for damages also indicates that the parties did not intend to contract with respect to liquidated damages." 265 Minn. 210, 121 N. W. 2d 75.

From these authorities we conclude that a provision in a contract of this kind calling for a forfeiture of the downpayment upon a breach of the contract will not of itself establish the fact that it is to be considered as liquidated damages. Whether the parties have stipulated for liquidated damages must be gleaned from the contract and all of the facts pointing to the intention of the parties. Before there can be a finding of liquidated damages, there must be evidence to support a finding that the parties intended the stipulated amount to be *in lieu of compensatory damages*. There is no such evidence in this case. As a matter of fact, what evidence there is points the other way. The provision in the printed contract which was used, pertaining to a forfeiture upon failure to fulfill the conditions of the contract, was left blank by the parties. Nor did defendants claim at the outset, or in their pleadings, that the downpayment was intended to constitute liquidated damages. In their answer and counterclaim they seek rescission of the contract and a return of the downpayment on the grounds of misrepresentation of the facts by plaintiffs. There is no evidence in the record that would establish the fact that the parties ever intended the downpayment to constitute liquidated damages. Furthermore, the court's holding that the downpay-

ment was intended to be liquidated damages is inconsistent with the court's finding allowing plaintiffs to recover the abstracting fees and advertising expenses as compensatory damages. If the parties intended the downpayment to constitute liquidated damages, payment of that amount, which no one disputes, would end the matter. There cannot be both liquidated damages and compensatory damages.

In 22 Am. Jur. 2d, Damages, § 235, we find the following:

"The effect of a clause for stipulated damages in a contract is to substitute the amount agreed upon as liquidated damages for the actual damages resulting from breach of the contract, and thereby prevents a controversy between the parties as to the amount of damages. If a provision is construed to be one for liquidated damages, the sum stipulated forms, in general, the measure of damages in case of a breach, and the recovery must be for that amount. No larger or smaller sum can be awarded even though the actual loss may be greater or less."

We recognize the rule that the findings of the trial court trying a case without a jury should not be disturbed on appeal if there is credible evidence to support them. But this rule is inapplicable where the findings of the court are not compatible with applicable law or where the evidence so clearly fails to sustain the court's findings. We are convinced that the court's finding that the downpayment made on this contract constitutes liquidated damages cannot stand.

■ We go then to the question of whether the court was correct on the issue of recoverable compensatory damages.

The general rule respecting the proper measure of damages in a case of this kind is easily stated, but sometimes not so easily applied.

In the case of Wilson v. Hoy, 120 Minn. 451, 454, 139 N. W. 817, 819 (1913), which involved an action to recover damages for an alleged breach of contract to purchase real estate, we said:

"The proper measure of damages for a breach by the pur-

chaser of a contract of purchase is the difference between the contract price and the actual or market value of the property at the time of the breach, including any expenses necessarily incurred by the vendor in his effort to carry out the contract."

In the case of Home Counsellors, Inc. v. Folta, 246 Minn. 481, 484, 75 N. W. 2d 417, 420 (1956), which also involved a contract for the purchase of real estate, we said:

"* * * The measure of damages for a breach by the purchaser of a contract of purchase is the difference between the contract price and the actual or market value of the property at the time of the breach, including any expenses necessarily incurred by the vendor in his effort to carry out the contract, minus any sums paid by the purchaser on the contract price."

In Costello v. Johnson, *supra,* we followed the same rule, citing and approving the above two cases.

Defendants' attempt to assist plaintiffs in reselling the property in mitigation of their damages is inconsistent with their present claim that their downpayment constituted liquidated damages. If the parties had intended the downpayment to constitute liquidated damages, defendants would have no interest in assisting plaintiffs in reselling the property. No one disputes the fact that the downpayment was actually made and retained by plaintiffs. That would have ended the matter as far as defendants' liability is concerned. In Paine v. Sherwood, 21 Minn. 225, 232 (1875), we find the following:

"The rule of common law is that where a party sustains a loss by reason of a breach of contract, he is, so far as money can do it, to be placed in the same situation, with respect to damages, as if the contract had been performed."

We gather from Graves v. Moses, 13 Minn. 307 (335) (1868), that plaintiffs are entitled to recover such damages as are the natural and proximate consequences of the breach. The rule of Paine v. Sherwood, *supra,* is modified by the old rule of Hadley

v. Baxendale, 154 Eng. Rep. 145 (Ex. 1854), which is still followed in this state (see, 5B Dunnell, Dig. [3 ed.] § 2559), holding that damages which one party to a contract ought to receive in respect to a breach of it by the other are such as (1) either arise naturally, that is, in the usual course of things, from the breach itself, or (2) such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as a probable result of breach. For other cases, see 5B Dunnell, Dig. (3 ed.) § 2559.

It is the duty of the seller in a contract of this kind, upon a breach by the buyer, to use reasonable diligence to minimize his damages. Lanesboro Produce & Hatchery Co. v. Forthun, 218 Minn. 377, 16 N. W. 2d 326 (1944); Costello v. Johnson, *supra.*

Thus, it follows that in this case the measure of damages is the difference between what defendants agreed to pay for the property and the actual market value at the time of defendants' breach plus such expenses as plaintiffs reasonably incurred in attempting to mitigate their damages less the amount they have already received as a downpayment. Applying this rule to the facts in this case, we find that the court was in error in denying at least some of the expenses incurred by plaintiffs. At the time of the breach, in reliance upon the contract, plaintiffs had altered their position by renting and moving into an apartment. The residence they had agreed to sell defendants remained vacant during the time they attempted to resell it. Had they remained in use and possession of the property, there is no doubt that some of these expenses would be offset against the reasonable value of the use, but here these expenses were incurred in an attempt to mitigate the general damages flowing from defendants' breach. Had plaintiffs failed to insure the property and a loss resulted as a result thereof, they could easily have been chargeable with failure to carry such insurance. The same is true with respect to the cost of heating the premises. In this climate it could hardly be expected that plaintiffs would leave the property vacant without heat or light, and the same is true with re-

spect to snow removal. With respect to the payment of the property taxes, had defendants performed according to their agreement, the taxes due in 1971 would have been paid by the purchaser, but as a result of the breach of the contract by defendants plaintiffs were obligated to pay these taxes before they could resell the property to someone else. The right to recover attorneys' fees depends on proof that such fees were incurred in plaintiffs' effort to minimize their damages. If they were simply incurred as part of plaintiffs' original attempt to sell the property, they would not be recoverable. We fail to see any difference between these expenses if incurred in any effort to minimize plaintiffs' damages and the expenses of abstracting and newspaper advertising, which the court did allow.

It is argued by defendants that plaintiffs probably secured a benefit from payment of the taxes on their income tax. This might be true, but it does not justify denial of at least that part of the taxes which were not offset by the benefit plaintiffs received on their income taxes.

In light of the fact that we are convinced the court was in error in holding the downpayment made by defendants constituted liquidated damages, we are of the opinion that the case should be remanded for retrial on the issue of damages so that the court may determine what expenses were actually incurred by plaintiffs in an effort to mitigate their damages. Apparently the court was of the opinion that some of these expenses were included within the amount which it found constituted liquidated damages.

The case is, therefore, remanded to the trial court for a trial and determination on the issue of damages not inconsistent with this opinion.

Reversed and remanded.

MR. CHIEF JUSTICE SHERAN took no part in the consideration or decision of this case.