**R. F. B. COTE, Appellee,**

v.

**Diana D. CHESLEY, as Personal Representative of the Estate of F. J. Chesley, Deceased, Appellant.**

**No. 77–1914.**

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1978.

Decided June 15, 1978.

Rehearing Denied July 12, 1978.

Robert M. Wattson, Minneapolis, Minn. (argued), Max J. Ruttger, III, Brainerd, Minn., and Donald A. Brown, Washington, D. C., on brief, for appellant.

Robert R. Alderman, Brainerd, Minn., argued and on brief, for appellee.

Before HEANEY, BRIGHT, and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Diana Chesley, a personal representative of the estate of F. J. Chesley, appeals from a judgment of $87,026.59 rendered against the estate. The sum consists primarily of interest on the unpaid purchase price of a plot of land that F. J. Chesley contracted to buy from appellee R. F. B. Cote. Chesley breached the contract, and Cote resold the land twenty-three months later to a third party for an amount to cover the original purchase price and expenses incurred by Cote in holding the realty. Appellant Chesley contests this award of interest. We agree with appellant's contention and reverse and remand for entry of a modified judgment.

I.

On October 20, 1971, R. F. B. Cote and F. J. Chesley executed a handwritten document in which Cote agreed to sell to Chesley a parcel of land in Crow Wing County, Minnesota, for $548,000. The agreement called for $50,000 down and payment of the balance in eight equal installments of principal plus eight percent interest on unpaid balances after the closing date of December 1, 1971.

Chesley failed to make the down payment when due on December 1, 1971. Cote then brought an action against Chesley in the Minnesota state court for specific performance or damages. Chesley removed the action to federal court on July 31, 1972, asserting jurisdiction based on diversity of citizenship.[1] Shortly afterwards he died, and his estate's personal representative, Diana Chesley, was substituted as the defendant. After the substitution, Cote filed a second action, this time against Diana Chesley, in federal court. The two cases were consolidated on February 25, 1974. Prior to trial, however, on November 24, 1973, Cote sold the land to a third party, Jerome Lenz. Lenz paid Cote $548,000 for the land plus $16,000 for 1972–73 property taxes and $2,000 for attorney fees.

Although the land had now been sold, the trial judge overruled a motion to dismiss made by the defendant, Chesley, and the case was tried on November 1, 1976. In an unpublished memorandum decision filed on September 30, 1977, the district judge found that the October 20, 1971, handwritten document was a binding contract. He further found that even though the land had been resold for the amount of the Cote-Chesley contract price plus incidental expenses for taxes and attorney fees, the plaintiff, Cote, was entitled to certain incidental expenses and to interest on both the unpaid principal and out-of-pocket expenses incurred between the closing date of the original contract, December 1, 1971, and the resale date of November 1, 1973. Accordingly, the trial court awarded plaintiff $87,026.59, which includes:

$84,026.59 for loss of interest on the $548,000 purchase price, computed at the rate of 8% over a 23-month period;

$2,000 for loss of interest on money paid for taxes, attorney fees, and miscellaneous expenses;

$1,000 for insurance payments on the buildings for the years 1972 and 1973.

II.

The sole issue raised on appeal is whether it was proper for the district court to award, as damages, interest on the unpaid purchase price of the land during the twenty-three month period between the closing of the Cote-Chesley contract and the date of resale to Lenz.[2]

■ Because our jurisdiction is based on diversity of citizenship, state law applies. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In this case the contract was executed in Minnesota, and both parties agree that Minnesota law governs.

■ Under Minnesota law, the measure of damages in contracts for the sale of land such as this one

is the difference between what defendants agreed to pay for the property and the actual market value at the time of defendants' breach plus such expenses as plaintiffs reasonably incurred in attempting to mitigate their damages less the amount they have already received as a downpayment. [*Frank v. Jansen*, 303 Minn. 86, 226 N.W.2d 739, 746 (1975).]

As noted above, the plaintiff resold the land to the third party, Lenz, for exactly the price at which he contracted to sell it to the defendant, Chesley. Under Minnesota law, then, he would be entitled to recover only the expenses he incurred in reselling the property or in mitigating his damages.[3]

■ Nevertheless, the district judge awarded substantial damages to the plaintiff. Most ($84,026.59) of the total award of $87,026.59 represented interest on the

---

1. 28 U.S.C. § 1332 (1970). The plaintiff, R. F. B. Cote, is a Minnesota resident. The defendant, F. J. Chesley, now deceased, was a Maryland resident.

2. Appellant abandoned on appeal claims that the October 20, 1971, handwritten document was not a contract and that the remainder of the damage judgment, $3,000, was improper.

3. At trial, no evidence of the market value at the time of the breach, December 1, 1971, was presented. Therefore, the trial judge found identity of market and contract price at the time of the breach.

unpaid purchase price for the twenty-three month period between the closing date of the Cote-Chesley contract and the resale date, computed at the rate of eight percent.[4] In doing so, the court relied on what it termed

a trend toward allowing interest on unliquidated claims, at the Court's discretion, when allowance is necessary to fully compensate the injured party[,] 22 Am.Jr., Damages, § 185 (1965)[,]

and found that this "trend" had taken hold in Minnesota:

This rule has been discussed in Minnesota cases. *See Swanson v. Andrus*, 83 Minn. 505, 85 [86] N.W. 465, 467 (1901); *Lacey v. Duluth, M. & I. Ry.*, 236 Minn. 104, 51 N.W.2d 831 (1952). In Minnesota, this exception to the general rule is applicable:

When the damages, even though unliquidated, do not depend on any contingencies and are ascertainable by computation or by reference to some generally recognized standards such as market value.

*Oliver[-]Electrical Manufacturing Co. v. I. O. Teigen Construction Co.*, 183 F.Supp. 769 [768] at 770 [769] (D.Minn. 1960).

None of the cases cited by the district court support its award of interest here in question, however. In those cases, the party sought recovery for a breach of contract relating to personal property or services and established a loss to a sum certain as of the time for performance of the contract. The economic losses claimed by parties in those cases are patently different than present here.

In the goods-services context, the seller has already given up the thing of value and the right to convert the goods or services into income-producing assets, such as cash. In contrast, in the present case the vendor has retained the land. Thus, during the almost two-year period between the breach of the sale contract by Chesley and the

resale to Lenz, Cote derived the entire benefit and income from possession of the land. According to the record, the parcel of land contained four or five farms that apparently yielded some revenue. The record, however, does not disclose how much.

That benefit from retaining the land for twenty-three months may have been greater or lesser than the amount of interest called for by the contract. Having retained the land, however, we believe that plaintiff-appellant was required to introduce evidence to establish that his losses on account of the breach of contract were greater than the revenue produced by the land. At trial, plaintiff-appellee Cote introduced no proof of any actual loss even though the burden of proving damages by a preponderance of the evidence rested with him. Thus, Cote established no basis for assessing as an item of damages the loss of interest on the purchase price during the twenty-three month period before he ultimately resold the land in question.

Our conclusion that interest was improperly awarded here is based on Minnesota law. As stated above, in *Frank v. Jansen* the Minnesota Supreme Court defined damages for breaches of contracts to sell land as simply the difference between actual market value at the time of the breach and the contract price, plus expenses incurred in mitigating damages. *See id.*, 226 N.W.2d at 746. No Minnesota case has ever upheld an award of interest on the unpaid purchase price of land. Moreover to do so, as defendant points out, would completely undercut the policy favoring prompt mitigation of damages. In effect, it would allow the plaintiff to collect twice: He would collect interest on the unpaid purchase price of the land as well as the income stream from the land. Under those circumstances, it would advantage the vendor to hold on to his land for a substantial period of time rather than promptly selling the land in order to mitigate the damages.

4. The eight percent rate was adopted at plaintiff's suggestion and was based on the contract provision calling for the payment of eight per-
cent interest on the unpaid principal during the installment purchase of the property.

We reverse and remand with instructions that the district court reduce its judgment by the sum of $84,026.59, the interest on the unpaid purchase price of the land over the twenty-three month period.

Each party shall bear his own costs on appeal.