TRW–TITLE INSURANCE COMPANY and Bobby Lindel Arnold and wife, Judith Gray Arnold, Plaintiffs–Appellants,

v.

STEWART TITLE GUARANTY COMPANY and First Federal Savings Bank of Tullahoma, Defendants–Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 13, 1991.

Application for Permission to Appeal Denied by Supreme Court March 23, 1992.

Ken Burger, Burger, Fly & McFarlin, Murfreesboro, Tenn., for plaintiffs-appellants.

David W. Kious, Murfreesboro, Tenn., for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiffs, Bobby Lindel Arnold and wife Judith Gray Arnold (the Arnolds), appeal from the dismissal of their complaint in which they sought to enjoin defendant, Stewart Title Guaranty Company (Stewart), from continuing with foreclosure proceedings against the Arnolds' property in Rutherford County, Tennessee.

John W. Hill and Hudie Hill (the Hills) were the owners of several tracts of land located in Rutherford County, Tennessee, including Lot 95, Old South Estates, and Lot 93, Ravenwood Subdivision. On 30 October 1985, the Hills obtained a construction loan in the sum of $55,100.00 from Cavalry Bank and secured the loan by a first mortgage on Lot 95, Old South Estates Subdivision, in Rutherford County, Tennessee. On the same date the Hills also obtained a second loan in the sum of $8,500.00 payable to Old South Estates, a partnership comprised of local residents, and secured by a second mortgage on Lot No. 95.

On 17 April 1986, the Hills borrowed an additional $25,000.00 from the Consumer Lending Department of Cavalry Bank, secured by a Deed of Trust on Lot 95 and six other separate parcels of real estate owned by the Hills in Rutherford County. Thus, Cavalry also became a third mortgage holder on Lot 95 of Old South Estates. Lot 93 of Ravenwood Subdivision was also subject to the deed of trust. The Hills sold Lot 93 to the Heunes who obtained financing from Mortgage Trust Company and Stewart Title issued a mortgagee's title policy to cover Mortgage Trust's interest in the property. Mortgage Trust Company assigned this loan to its current holder and Stewart Title's current insured, Third National Mortgage. Defendant Stewart Title has at no time insured Lot 95, the property in question.

In May 1986, the Hills sold Lot 95 to the Arnolds for the sum of $69,500.00. The Arnolds borrowed the purchase price from the First Federal Savings Bank of Tullahoma (First Federal). First Federal requested a mortgage title insurance policy through the closing attorney, Larry Tolbert.

On 19 April 1986, Tolbert performed the title search on Lot 95 as part of the preparation of the title binder for First Federal for the policy to be issued through plaintiff, TRW–Title Insurance Company. His research revealed the existence of the following three mortgages on Lot 95: 1) a construction loan held by Cavalry Bank, 2) an owner-financing type deed of trust held by Old South Estates, and 3) a deed of trust to Cavalry that encumbered a total of seven parcels owned by the Hills, including Lot No. 95.

Mr. Tolbert, following the same procedure he used in some two hundred or more closings in 1986, called Cavalry Bank to obtain the pay-off on its loans to the Hills. The pay-off figure provided by Cavalry did not include the amount owed on the third note which was handled by the Consumer Lending Department of Cavalry Bank. Mr. Tolbert inserted the pay-off figure provided by Cavalry in the closing statement, withheld the amount from the sales proceeds, and delivered the necessary proceeds to Cavalry to pay off the loans. The deed of trust from the Arnolds to plaintiff First Federal was properly recorded. Subsequent to closing, Mr. Tolbert issued a title policy insuring First Federal Savings Bank of Tullahoma.

In November 1990, some four years after the closing, the Hills filed for bankruptcy in the Eastern District of Tennessee and shortly thereafter Cavalry Bank commenced foreclosure proceedings. Mr. William T. Sellers, Jr., representing Cavalry Bank, filed a proof of claim in the Hill Bankruptcy proceeding. Incidental to filing that claim, it was discovered that a balance of $13,000.00 remained payable on the $25,000.00 note secured by the deed of trust on the seven lots owned by the Hills. Lot 95, owned by the Arnolds, and Lot 93, owned by the Heunes, had not been released and, therefore, the third deed of trust was valid as to Lots 95 and 93. Mr. Sellers, representing Cavalry Bank, contacted Mr. Tolbert and advised him that the pay-off amount provided four years earlier

was incorrect because it did not include the pay-off of the third mortgage and that approximately $13,000.00 remained to be paid on the $25,000.00 note.

Mr. Sellers also contacted the Arnolds, owners of Lot 95, and the Heunes, owners of Lot 93, and informed them that Cavalry Bank was pursuing foreclosure against the properties based upon the third mortgage executed in 1986 by their predecessors in title Mr. and Mrs. Hill. The Arnolds were current and in no way in default on payments on their existing mortgage held by First Federal which had a remaining balance of approximately $50,000.00.

Mr. Sellers engaged in negotiations with both plaintiff, TRW–Title Insurance Company as insurer for First Federal on Lot 95, and Stewart Title as insurer for Third National Mortgage on Lot 93. During the pendency of these negotiations, Stewart Title paid the entire balance of $13,000.00 owing to Cavalry Bank. Cavalry then assigned to Stewart Title the note and deed of trust in return for the pay-off balance on the third mortgage loan.

In the trial court, the plaintiffs insisted that defendant Stewart Title stood in the shoes of Cavalry and that the negligence of Cavalry in failing to give Mr. Tolbert the correct pay-off amount precluded Cavalry from foreclosing on the Arnolds' property. Plaintiffs further insisted that Cavalry was negligent in providing the pay-off amount to Mr. Tolbert, the closing attorney, and that this negligence would preclude Stewart Title from foreclosing on the Arnolds' property. Plaintiff TRW further contended that in the event Stewart Title was entitled to proceed with foreclosure, TRW Title would owe no more than fifty percent of the pay-off amount Stewart Title paid to Cavalry, or approximately $7,000.00. The trial court found no merit in these contentions and dismissed plaintiffs' complaint.

On appeal, plaintiffs' first issue is:

Where two title insurers have issued policies of coverage insuring the title to separate lots, both of which had been previously pledged as security under a single deed of trust, guaranteeing payment of a single note, by a previous common grantor/owner, may one insurer pay the indebtedness to the bank in full, receiving an assignment of the note and deed of trust, and thereafter proceed with foreclosure against the other lot to recoup the entire loss from the other title insurer?

■ TRW argues that TRW and Stewart Title insured the same interest and therefore TRW has a right to contribution against Stewart Title for any sums TRW must pay under its title insurance policy to First Federal. It is a universal rule that the principle of contribution applies only in situations where the equities of the parties are equal in that they share a common obligation or liability. *Commercial Union Ins. Co. v. Farmers Mutual Fire Ins. Co.*, 457 S.W.2d 224, 227 (Mo.App.1970).

As a matter of substantive law, the principle of contribution is founded not upon contract but upon principles of equity and natural justice, which require that those who are under a common obligation or burden shall bear it in equal proportions and one party shall not be subject to bear more than his just share to the advantage of his co-obligor. The basic elements are that both parties be under a common obligation and that the party seeking contribution has paid more than his proper share of the obligation.

*Huggins v. Graves*, 337 F.2d 486, 489 (6th Cir.1964). *See Baxter v. Smith*, 211 Tenn. 347, 353–55, 364 S.W.2d 936, 939–40 (1962).

It is essential to the application of the principle of contribution that the party claiming contribution be equally liable with the others. *J.F. Elkins Construction Co. v. Naill Brothers*, 168 Tenn. 165, 168, 76 S.W.2d 326, 327 (1934).

■ Here, Stewart Title insured Third National Mortgage for Lot 93 and TRW insured First Federal for Lot 95. TRW was contractually obligated to insure First Federal for an amount not to exceed the amount of First Federal's loan to the Arnolds. Stewart Title's contractual obligation was to insure Third National Mortgage for an amount not exceeding the loan amount to the Heunes. Each title insurer

insured different insureds for separate tracts of land. Stewart Title and TRW are not equally liable to the Arnolds, the Heunes, Third National Mortgage, or First Federal. We are of the opinion that TRW and Stewart Title do not share a common obligation and, therefore, contribution is not involved in this case. This issue is without merit.

 Plaintiff's second issue is: "[t]o what extent are the defenses assertable against a mortgage lending institution available against an assignee of an obligation secured by deed of trust to that mortgagee?"

In the trial court, plaintiffs contended that Stewart Title stood in the shoes of Cavalry Bank and that all the defenses available against Cavalry would be available against Stewart Title. We agree. Stewart Title, by purchasing the Cavalry note has stepped into the shoes of Cavalry and, as a result, has assumed the role of the mortgagee. Two separate interests are insured.

◼ We are of the opinion that TRW's argument, that if it becomes obligated to pay the $13,000.00 sum then TRW would be subrogated into a position of ownership in the note and deed of trust which would permit it to foreclose on Lot 93, is without merit.

Tennessee Code Annotated, Section 66–25–101(a) (Supp.1991) provides:

> When a debt secured by a mortgage, deed of trust, or by lien retained in a deed of conveyance of land or bill of sale, or other instrument, has been fully paid or satisfied, the mortgagee, transferee, or assignee of the mortgagee or the legal holder of the debt secured by deed of trust or lien who has received payment or satisfaction of the debt, must satisfy the record by a formal deed of release.

When and if TRW pays its insured under the title policy, Stewart Title will be obligated to cause the deed of trust to be released. TRW would gain no interest in Lot 93 of Ravenwood Subdivision. In this case, Stewart Title is not in the position of a subrogator. Stewart Title received an assignment of the note secured by a deed of trust on Lot 95. As a practical matter Stewart Title has become the mortgagee and, as the holder of the deed of trust, is foreclosing on the past-due note it purchased from Cavalry.

We have considered each of the issues raised by appellants and find them to be without merit.

The judgment of the trial court is affirmed with costs assessed against plaintiffs and the cause remanded to the trial court for the collection of costs and for any further necessary proceedings.

CANTRELL and KOCH, JJ., concur.