# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### JANUARY 22, 2010 Session

## JOHN SKIPPER and BRENDA SKIPPER v. WELLS FARGO BANK, N.A.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-07-1599-I    Walter L. Evans, Chancellor**

_____

**No. W2009-01786-COA-R3-CV - Filed April 15, 2010**

_____

Wells Fargo purchased foreclosed property, which it then sold to the Skippers. The Skippers contracted to sell the property, but before the sale was completed, two IRS tax liens against the previous owners were discovered. The Skippers sued Wells Fargo, and the trial court awarded them their lost profits from the anticipated sale. Wells Fargo appeals, and we affirm in part and reverse in part and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Philip M. Kleinsmith, Colorado Springs, Colorado, for the appellant, Wells Fargo Bank, N.A.

G. Patrick Arnoult, Memphis, Tennessee, for the appellees, John Skipper and Brenda Skipper

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Robert and Pamela Bramlett borrowed $56,700.00 from Argent Mortgage Company, LLC ("Argent"), secured by a deed of trust, dated May 2004, on their real property located at 850 North Frayser Circle, Memphis, Tennessee ("the property"). In May 2005, the deed of trust was assigned to Ameriquest Mortgage Co. and then to Wells Fargo Bank, NA, Trustee, for the Benefit of Certificate Holders of Asset-Backed Pass-Through Certificates Series 2004 WCW1 ("Wells Fargo"). In November of 2005, the Internal Revenue Service ("IRS") filed two tax liens against the Bramletts in the office of the Shelby County Register of Deeds. On February 1, 2006, Wells Fargo appointed Philip M. Kleinsmith as substitute trustee, and on March 23, 2006, Wells Fargo purchased the property in a foreclosure sale.

John and Brenda Skipper ("Appellees") purchased the property from Wells Fargo, on July 7, 2006, for $20,496.64. The "Corporate Special Warranty Deed" presented to the Skippers contained the following language:

> The conveyance is made subject to any Subdivision Restrictions, Building Lines and Easements of Record in Plat Book 12, Page 32, Easements of Record at Book 4020 Page 529, and the 2006 Shelby County and 2007 City of Memphis real property taxes, not yet due and payable, which are assumed by the Grantee.
>
> TO HAVE AND TO HOLD The aforesaid real estate, together with all the appurtenances and hereditaments thereunto belonging or in any wise appertaining unto the said Grantee, his/her heirs, successors and assigns in fee simple forever.
>
> The Grantor does hereby covenant with the Grantee that the Grantor is lawfully seized in fee of the aforedescribed real estate; that the Grantor has a good right to sell and convey the same; that the same is unencumbered except as set out above.
>
> And the parties of the first part do hereby covenant with the parties of the second part that the title and quiet possession thereto they will warrant and forever defend against the lawful claims of all persons claiming by, through, or under them, but not further or otherwise.

The Skippers then spent $10,998.97 renovating the property in anticipation of a re-sale. On

December 4, 2006, the Skippers entered into a real estate sales contract to sell the property to Phyllis McDaniel for $63,000.00 to be closed on or before January 1, 2007. However, before the sale closed, the existence of the two IRS liens totaling $127,643.84 was discovered.[1]

The Skippers maintained fire insurance on the property through February 2007. However, after the policy lapsed, the property was seriously damaged by fire on June 24, 2007, and subsequently demolished by the city of Memphis.

The Skippers filed a complaint against Wells Fargo on August 13, 2007, alleging, among other things, that Wells Fargo breached its warranty of good title and that it failed to comply with the provisions of Tennessee Code Annotated section 35-5-104. On December 19, 2007, the Skippers also filed a complaint against First American Title Insurance Company ("First American"), which had issued a title insurance policy insuring the property against unmarketability, or any defect, lien, or encumbrance on the title. The suits against First American and Wells Fargo were consolidated and tried jointly. After the trial in this matter, but prior to the trial court's ruling, the Skippers settled their claim with First American for $13,000.00. The trial court entered an order on May 21, 2009, awarding the Skippers $21,221.12. The trial court issued lengthy findings of fact, including the following:

> The Warranty Deed contained a warranty that [Wells Fargo] had a good right to sell and convey the said property and that the property was unencumbered except for subdivision restrictions, building lines and easements of record and property taxes not yet due and payable. The deed did not make any exception for two unreleased IRS tax liens.
>
> . . . .
>
> It is undisputed that the McDaniel contract failed to close because of the existence of two unreleased IRS tax liens filed in the Register's Office against the previous owners of the property, Robert and Pamela Bramlett.
>
> Plaintiffs aver (and Defendant Wells Fargo admits) that these tax liens were not disclosed to them (Skippers) at the time of their purchase of the property or in the Notice of Foreclosure Sale, or in the Trustee's Deed to Wells Fargo or the Warranty Deed to the Skippers.

The trial court also made conclusions of law, in relevant part, as follows:

---

[1]The IRS tax liens were ultimately released in November 2007.

"Fee simple" title did pass to the Skippers after the [Successor] Trustee's Deed to Wells Fargo.

. . . .

On March 23, 2006 the foreclosure sale was held and Wells Fargo was the successful bidder. There is no indication that any other person or entity appeared at the foreclosure sale and made any other bid on said property.

. . . .

At the time Wells Fargo executed the Warranty Deed to Plaintiffs, there is no proof, of record, that it knew about the pre-existing IRS tax liens that had been filed against the Bramletts prior to the foreclosure sale.

. . . .

Although the Defendant Wells Fargo committed no fraud or misrepresentation against the Skippers, it did warrant that title to the property, as of July 21, 2007, was "unencumbered except for subdivision restriction[s], building lines and easements of record and property taxes not yet due and payable."

Such a representation implied that the title to the real property being purchased by the Skippers was "marketable", and unencumbered except for the above specified limitations and restrictions, at the time of that closing.

The existence of the two (2) unreleased IRS tax liens defeated the "marketability" of the Skippers title on January 1, 2007 and resulted in lost profit to the Skippers as a result of the failed McDaniel closing.

Had the Skippers been able to close on the McDaniel contract, they would have received a gross profit of approximately $24,721.12 (or $63,000.00 less $38,278.88), less whatever their closing expenses would have been, from their resale of the improved real estate.

When the McDaniel contract fell through, the Skippers were damaged at that time, with lost profits, but they still possessed and had ownership of the subject real estate with improvements thereon.

For purposes of computing damages, it makes no difference to this Court as to

what insurance the [S]kippers did or did not have on the property thereafter, they still owned the same.

After learning of the settlement with First American, Wells Fargo sought a reduction of the trial court's judgment by the settlement amount. Said motion was denied. Wells Fargo appeals.

## II. ISSUES PRESENTED

Wells Fargo has timely filed its notice of appeal and presents the following issues for review:

1.      Did the Wells Fargo Special Warranty Deed to the Skippers contain a warranty against the IRS liens;

2.      Was the Wells Fargo Special Warranty Deed to the Skippers an "implied warranty of merchantability" against the IRS liens;

3.      Did the Skippers have a legal duty to mitigate their damages by insuring the Frayser Property against fire; and

4.      If Wells Fargo is liable to the Skippers, should their $13,000.00 settlement from First American be a credit against that liability?

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2009); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)). We accord great deference to a trial court's determinations on matters of witness credibility and will not re-evaluate such determinations absent clear and convincing evidence to the

contrary.  ***Wells v. Tennessee Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted).  We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness.  ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. IRS Tax Liens

Wells Fargo claims that its Corporate Special Warranty Deed ("Deed") to the Skippers contains conflicting language; it warrants against all encumbrances except those specifically mentioned above–subdivision restrictions, building liens and easements of record, and property taxes–but then it states that it warrants only against encumbrances by, through, or under Wells Fargo.  Wells Fargo maintains that a "reasonable interpretation" of the conflicting language results in the following warranty:

> Wells Fargo warrants that title is "unencumbered" except for (the specific specified exceptions) and "will warrant and defend against the lawful claims of all persons claiming by, through or under Wells Fargo, but not further or otherwise.

Rather than focusing on the Deed's language, the Skippers primarily rely upon the statutory language found in Tennessee Code Annotated section 35-5-101, et seq., contending that it imposed an affirmative duty upon Wells Fargo to disclose the IRS liens.  Tennessee Code Annotated section 35-5-101, et seq. provides in part:

> In a sale of land to foreclose a deed of trust, mortgage or other lien securing the payment of money or other thing of value or under judicial orders or process, advertisement of the sale shall be made at least three (3) different times in some newspaper published in the county where the sale is to be made.
>
> . . . .
>
> (a) The advertisement or notice shall:
>
> . . . .
>
> (4)(A) Identify each and every lien or claimed lien of the United States with

respect to which 26 U.S.C. § 7425(b)[2] requires notice to be given to the United States in order for the sale of the land thus advertised not to be subject to the lien or claim of lien of the United States;

(B) For every lien or claim of lien of the United States so identified, affirmatively state that the notice required by 26 U.S.C. § 7425(b) to be given to the United States has been timely given;

(C) For every lien or claim of lien of the United States so identified, state that the sale of the land thus advertised will be subject to the right of the United States to redeem the land as provided for in 26 U.S.C. § 7425(d)(1);

. . . .

(5)(C)(b) The deed memorializing the sale shall . . . whenever subsection (a) has required notice to be given to the United States . . . state that the land described therein is conveyed subject to the rights of the United States to redeem the land as provided for in 26 U.S.C. § 7425(d)(1) . . . , shall have attached to it, as exhibits, a copy of the notice thus provided to the United States, a copy of the written response of the United States to the notice thus provided, if any[.]

. . . .

Should the officer, or other person making the sale, proceed to sell without pursuing the provisions of this chapter, the sale shall not on that account, be either void or voidable.

Any officer, or other person, referenced in § 35-5-106[3] who fails to comply with this chapter commits a Class C misdemeanor and is, moreover, liable to the party injured by the noncompliance, for all damages resulting from the failure.

---

[2]26 U.S.C.A. § 7425(b) provides that the sale of property on which the United States claims a lien shall be made subject to such lien, if the lien was timely recorded and the United States was without notice of the sale.

[3]Tennessee Code Annotated section 35-5-106 refers to an "officer" or "other person making the sale[.]"

**Tenn. Code Ann. §§ 35-5-101, -104, -106, -07**. According to the Skippers, when Wells Fargo foreclosed on, and ultimately purchased, the property, it failed to advertise or give notice regarding governmental liens, and it failed to include the required language within Wells Fargo's Successor Trustee Deed. The Skippers claim that "the failure of the Trustee to include such lien information in the foreclosure deed constituted a representation on the public record in the Register's Office of Shelby County, Tennessee, to be relied upon by subsequent title examiners that no such IRS liens existed unless the search reached back in time beyond the Trustee's deed to Wells Fargo."

The trial court addressed neither the Skippers' argument regarding strict liability for failure to comply with the requirements of the foreclosure statutes, nor the allegedly contradictory language included within the Deed. Instead, it focused on the Deed's warranty that the property was unencumbered except for the specified limitations and restrictions, and it found that such language implied that the property was "marketable." It then held Wells Fargo liable for the profit the Skippers lost when the discovery of the IRS tax liens prevented the property's sale.

We agree with the Skippers' contention that Wells Fargo's failure to advertise or give notice regarding the tax liens, and its failure to include language within the Deed that such notice had been given and that the property was conveyed subject to the tax liens, violated the statutory requirements of Tennessee Code Annotated section 35-5-101, et seq. Thus, pursuant to section 35-5-107, Wells Fargo is liable to the Skippers "for all damages resulting from the failure." **Tenn. Code Ann. § 35-5-107**. We affirm the trial court's award of $21,221.12[4] for lost profits, and we need not address the Deed's allegedly conflicting language.

### B.    Insurance

After purchasing the property in July 2006, the Skippers insured it against fire. During the months of December 2006 and January 2007, the property was broken in to three times. In February 2007, subsequent to learning of the existence of the tax liens, the Skippers boarded up the property and ceased insuring it. The uninsured property was partially destroyed by fire in June 2007, and subsequently demolished.

Wells Fargo contends that the Skippers had a duty to mitigate their damages by insuring the property against fire. Wells Fargo claims that the property could have been

---

[4]The judgment represents a $63,000.00 contract sales price less the Skippers' $38,278.88 investment and $3,500.00 closing costs.

insured for a nominal fee of $107 per month, and that if so insured, the Skippers' damages could have been reduced or eliminated. According to Wells Fargo, had the property been insured, upon its destruction the Skippers could have recovered $40,000.00, restored the property, and potentially resold it for an amount equal to or greater than the McDaniel purchase price, thus eliminating a judgment for lost profits. Alternatively, Wells Fargo claims that the Skippers could have satisfied or reduced their claim against it by pocketing the insurance proceeds and selling the vacant land.

The trial court found that "[w]hen the McDaniel contract fell through, the Skippers were damaged at that time" and that "[f]or [the] purpose of computing damages, it makes no difference to this Court as to what insurance the [S]kippers did nor did not have on the property thereafter, they still owned the same." Under the facts of this case, we find that the Skippers had a duty to insure the property. In *Turner v. Benson*, 672 S.W.2d 752, 757 (Tenn. 1984), our Supreme Court allowed the plaintiff owners to recover insurance premiums expended when the buyer defendants breached the parties' home sale contract. As dicta, the Court stated that "[h]ad the plaintiffs failed to insure the property and a loss resulted thereof, they could easily have been chargeable with failure to carry such insurance." **Turner**, 672 S.W.2d at 757 (citing *Kemp v. Gannett*, 50 Ill. App. 3d 429, 8 Ill. Dec. 726, 365 N.E.2d 1112 (Ill. App. Ct. 1977); *Frank v. Jansen*, 303 Minn. 86, 226 N.W.2d 739 (Minn. 1975)); *see also Farmer v. Reed Keras Buick Co.*, 1986 WL 2304, at *4 (Tenn. Ct. App. W.S. Feb. 20, 1986) *reh'g denied* (Tenn. Mar. 21, 1986) (noting that the plaintiffs' had a contractual duty to maintain physical damage insurance, and that their failure to insure their property constituted a failure to mitigate their damages). Because the Skippers' damages could have been reduced or even eliminated by an insurance payout, we find that Wells Fargo's liability should be reduced to reflect the damage the Skippers would have suffered, if any, had they maintained insurance on the property, and we remand to the trial court for this determination.

### C. *Settlement Credit*

Finally, Wells Fargo argues that the trial court erred in denying its motion to reduce the Skippers' award by the amount of the First American Settlement. Wells Fargo maintains that unless the award is reduced, the Skippers will receive a "windfall double recovery." However, the Skippers claim that "[t]his is not a case where two defendants in the same lawsuit are jointly and severally liable for damages caused to a plaintiff for which one defendant would be entitled under a theory of contribution or comparative negligence to be credited for whatever the other defendant may have paid to obtain a release from risk of additional liability at trial on . . . one common legal theory[.]" Instead, the Skippers maintain that a setoff is inappropriate because the settlement and the trial court award involve separate theories of liability. According to the Skippers, the only common theory of liability alleged

against both Wells Fargo and First American was that the Deed failed to convey title from Wells Fargo to the Skippers. They claim it is for this theory, which was ultimately resolved by the trial court in favor of Wells Fargo, that First American paid the Skippers a $13,000.00 settlement, whereas, the trial court's $21,000.00 judgment was for the Skipper's lost profits.

Although the details of the settlement between the Skippers and First American are not disclosed within the record before us, we are, nonetheless, able to conclude that the settlement and the trial court judgment are based on differing theories of liability. The trial court awarded damages to the Skippers for their lost profits resulting from the discovery of the tax liens–a count not alleged by the Skippers against First American. "It is a universal rule that the principle of contribution applies only in situations where the equities of the parties are equal in that they share a common obligation or liability." ***TRW-Title Ins. Co. v. Stewart Title Guar. Co.***, 832 S.W.2d 344, 346 (Tenn. Ct. App. 1991) (citing *Commercial Union Ins. Co. v. Farmers Mut. Fire Ins. Co.*, 457 S.W.2d 224, 227 (Mo. Ct. App. 1970)); *see also Huggins v. Graves*, 337 F.2d 486, 489 (6th Cir. 1964). Thus, because the two awards were apparently based on different theories of liability, we affirm the trial court's denial of Wells Fargo's motion for a reduction.

## V. CONCLUSION

For the aforementioned reasons, we affirm in part and reverse in part. We remand to the trial court for a determination of the appropriate judgment reduction based on the Skipper's failure to mitigate their damages. Costs of this appeal are taxed equally to Appellant, Wells Fargo Bank, NA, and its surety, and Appellees, John and Brenda Skipper, for which execution may issue if necessary.____

_____ALAN E. HIGHERS, P.J., W.S.